UNITED STATED DISTRICT COURT
DISTRICT OF CONNECTICUT

———————————————————— :
:
MODIS, INC.                                  :
        Plaintiff,                           :
                                             :         CASE NO. 3:07-CV-01638 (WWE)
V.                                           :
                                             :
TRISHA BARDELLI, ET AL.                      :
        Defendants.                          :         DECEMBER 28, 2007
———————————————————— :

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants Trisha Bardelli and Edge Technology Services, Inc.

(collectively, "Defendants") submit the instant memorandum in support of their

Motion to Dismiss submitted simultaneously herewith.  For the reasons

discussed below, Counts One, Five, Six, Eight and Nine of the Complaint should

be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that they fail to

state claims upon which relief may be granted, and Edge Technology Services,

Inc. should, therefore, be dismissed as a defendant in this matter.

## I.    BACKGROUND

The Amended Complaint for Damages and Injunctive Relief and Other

Relief, filed on November 27, 2007 (the "Complaint"), alleges the following facts

relevant to the instant motion to dismiss.[1]

From June 19, 2000 through October 5, 2007, Defendant Trisha Bardelli

("Bardelli") was employed as a Resource Development Manager at Plaintiff

Modis, Inc. ("Modis"), where she was responsible for locating and recruiting

---

[1] Defendants adamantly deny the allegations of wrongdoing in the Complaint but, solely for the purposes of the instant motion, set forth same without contest.

**ORAL ARGUMENT REQUESTED**

candidates to place at clients of Modis in the Meriden, Connecticut area.

Complaint ¶¶ 11-13.  In connection with such employment, Bardelli executed an

Employment Agreement with Modis in February 2004, which Agreement

contained restrictive covenants prohibiting Bardelli, for a period of 12 months

following the termination of her employment with Modis, from: (i) soliciting,

contacting, calling upon, or attempting to call upon, for any business which

competes with Modis, any established or prospective Modis clients served or

solicited by Modis in the Market Area (defined as the area within a 50 mile radius

of Modis' Meriden office) during the 12 months prior to the termination of

Bardelli's employment with Modis; and (ii) within the Market Area, entering into,

engaging in, being employed by, being connected to, consulting or rendering

services for, any business which competes with, or is similar to, Modis' business,

in a capacity performing functions similar to those performed or managed by

Bardelli while employed by Modis.  Id. ¶¶ 29-30.  The Employment Agreement

also prohibits disclosure of Modis' confidential information.  Id. ¶ 31.

Allegedly in violation of the foregoing covenants and restrictions, Bardelli,

while still employed with Modis, began communicating with representatives of

Defendant Edge Technology Services, Inc. ("Edge") relative to her working for

Edge in a capacity and with duties and responsibilities similar to or the same as

those of her position with Modis.  Complaint ¶ 37.  Bardelli allegedly also utilized

Modis' electronic mail ("e-mail") system and accessed, without authorization,

information in Modis' database about its clients for her own purposes.  Id.

After she left Modis' employment, Bardelli was recruited and hired by

Edge, and has been performing duties and responsibilities for Edge similar to

those she had performed for Modis.  Complaint ¶ 40.  In her employment at

Edge, Bardelli allegedly has divulged, misappropriated, and used Modis'

confidential trade secret and other proprietary information obtained during the

course of her employment at Modis.  Id. ¶ 39.

Modis alleges the foregoing conduct constitutes: violation of the Computer

Fraud and Abuse Act as to Bardelli (Count One); breach of the Employment

Agreement as to Bardelli (Count Two); breach of Bardelli's duty of loyalty (Count

Three); misappropriation of trade secrets as to Bardelli (Count Four); breach of

the implied covenant of good faith and fair dealing as to Bardelli (Count Five);

conversion as to Bardelli (Count Six); violation of the Connecticut Unfair Trade

Practices Act as to Bardelli (Count Seven); and tortious interference with

contractual and/or advantageous business relations (Count Eight as to Bardelli,

Count Nine as to Edge).

## II.    STANDARD OF REVIEW

When deciding a motion to dismiss for failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6), the court accepts as true all factual allegations in the

complaint and draws inferences from these allegations in the light most favorable

to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In deciding a

motion to dismiss, the court does not determine whether the plaintiff ultimately

will prevail. Instead, the court determines whether the plaintiff should be

permitted to present evidence to support its claims. See York v. Ass'n of the Bar,

286 F.3d 122, 125 (2d Cir.) (quoting <u>Scheuer</u>, 416 U.S. at 236), <u>cert. denied</u>, 537

U.S. 1089 (2002).  In ruling on the motion, a district court must limit itself to facts

stated in the complaint.  <u>See</u> <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 773 (2d

Cir. 1991). However, "[c]onclusory allegations or legal conclusions masquerading

as factual conclusions will not suffice to prevent a motion to dismiss" from being

granted.  <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir.

2002) (internal quotation marks and citation omitted).

III.   **ARGUMENT**

The following counts of the Complaint should be dismissed.

A.   <u>Count One: Computer Fraud and Abuse Act</u>

Count One of the Complaint alleges that Bardelli's conduct constitutes a

violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, <u>et seq.</u>

(the "Act"). Said claim, however, fails to allege several of the requisite

jurisdictional elements.  Accordingly, Count One fails to state a claim upon which

relief may be granted, and must be dismissed.[2]

---

[2] Plaintiff's failure to meet the jurisdictional requirements of the Act implicates the
Court's subject matter jurisdiction and Fed. R. Civ. P. 12(b)(1).  Defendants do
not move for dismissal under this section of Rule 12, however, in light of the
Second Circuit's directive that "when the contested basis of federal jurisdiction is
also an element of plaintiff's asserted federal claim, the claim should not be
dismissed for want of jurisdiction except when it appears to be immaterial and
made solely for the purpose of obtaining jurisdiction or where such a claim is
wholly insubstantial and frivolous." <u>AVC Nederland B.V. v. Atrium Inv. Pshp.</u>, 740
F.2d 148 (2d Cir. 1984) (internal citations omitted). As diversity jurisdiction
appears to exist in this matter in any event, Defendants presume that an
examination under 12(b)(6), rather than under 12(b)(1), is appropriate. <u>See, e.g.</u>,
<u>Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.</u>, 387 F. Supp. 2d 378, 380-
381 (S.D.N.Y. 2005).

The Act provides in relevant part:  "Whoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains--… information from any protected computer if the conduct involved an interstate or foreign communication; . . . shall be punished as provided in subsection (c) of this section."  18 U.S.C. § 1030(a)(2)(C).[3]  A "protected computer" must be used in interstate or foreign commerce or communication.  See 18 U.S.C. § 1030(e)(2).  Subsection (g) of the Act permits a person who suffers "damage or loss" by reason of a violation of the Act to bring a civil action to obtain compensatory damages and injunctive relief and other equitable relief.  See 18 U.S.C. § 1030(g).  The term "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information"; "the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service".  18 U.S.C. § 1030(e)(8),(11).

---

[3] The Complaint does not specify which subsection of the Act is alleged to have been violated.  None of the other subsections of the Act appears to be applicable, however, as they involve (i) computers of the United States Government, its departments or agencies, financial institutions or consumer reporting agencies, (ii) transmission of a program causing damage to a protected computer; (iii) unauthorized access to a protected computer and recklessly causing damage,  or (iv) conduct with an intent to defraud or extort.  None of the foregoing conduct is alleged in the Complaint.  Accordingly, should Plaintiff intend to claim violations of any of these other subsections, it has not satisfied the notice-pleading standard of Fed. R. Civ. 8(a)(2).  Cf. Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (noting that, pursuant to Rule 8(a), the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist).

a40967.doc                              5

In the instant matter, the Complaint alleges the following in support of Modis' claim under the Act:

46. Modis uses its computers in interstate commerce or communications.
47. Defendant Bardelli intentionally accessed Modis' Database without authorization and/or exceeded her authorized access, and transferred that information outside of Modis to her own possession, thereby misappropriating and obtaining valuable and confidential, proprietary and trade secret information belonging to Modis.
48. Defendant Bardelli's conduct caused losses to Modis in excess of $5,000.

Tellingly, Modis does not allege that Bardelli's specific conduct involved an interstate or foreign communication, as required under the Act. Nor could it, as Bardelli is alleged merely to have emailed certain contact information from her office computer in Meriden, Connecticut, to her personal email account and presumably accessed same at her home in Chester, Connecticut. See Complaint ¶ 38. Similarly, Modis fails to allege that the specific computer accessed by Bardelli was a "protected computer" in that it was used in interstate or foreign commerce or communication. To the contrary, Modis specifically alleges that Bardelli's activities primarily took place for Modis within the 50-mile radius of Modis' Meriden office. See Complaint ¶ 35-36. The broad allegation that Modis generally utilizes its computers in interstate commerce in no way meets the jurisdictional requirements for a claim against Bardelli under the Act. See, e.g., Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey, 497 F. Supp. 2d 627, 646-647 (E.D. Pa. 2007) (stating that plaintiff could meet the interstate communication requirement by demonstrating that the defendant itself unlawfully accessed a computer in a manner utilizing interstate commerce);

Credentials Plus, LLC v. Calderone, 230 F. Supp. 2d 890, 906 (N.D. Ind. 2002) (concluding that plaintiff stated a valid claim under the Act because it alleged that defendants intentionally accessed plaintiff's computer and obtained information on clients and potential clients outside the state by rerouting client email originally sent to plaintiff from customers throughout the country); Am. Online, Inc. v. Nat'l Health Care Disc., Inc., 174 F. Supp. 2d 890, 899 (N.D. Iowa 2001) ("the elements of a claim under subsection [1030](a)(2)(C) have been met, to-wit: (1) [Defendants] 'intentionally accessed a computer'; (2) they 'exceeded authorized access' by violating the Terms of Service; (3) as a result, they obtained information; (4) the information was obtained from 'a protected computer'; and (5) their conduct involved an interstate or foreign communication") (internal citations omitted).

Modis also fails to establish the necessary criterion that Bardelli's use of Plaintiff's computer was without authorization or exceeded her authorized access.  While Modis broadly alleges that "Bardelli accessed Modis' Database without authorization and/or exceeded her authorized access", Complaint ¶ 47, the underlying facts as alleged cannot support such an assertion, as Bardelli clearly was "authorized" to conduct the alleged database searches as a Modis employee.

Although not defined by the Act, many courts have interpreted the phrase "without authorization" only to reach conduct by outsiders who do not have permission to access the plaintiffs computer in the first place. See, e.g., In re AOL, Inc., 168 F. Supp. 2d 1359, 1370 (S.D. Fla. 2001) (concluding that the

phrase "without authorization" in the Act "contemplate[s] a situation where an outsider, or someone without authorization, accesses a computer"); Lockheed Martin Corp. v. Speed, 2006 U.S. Dist. LEXIS 53108, (M.D. Fla. Aug. 1, 2006) (same); Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda, 390 F. Supp. 2d 479, 498 (D. Md. 2005) ("Thus, to the extent that Werner-Masuda may have breached the Registration Agreement by using the information obtained for purposes contrary to the policies established by the IAM Constitution, it does not follow, as a matter of law, that she was not authorized to access the information, or that she did so in excess of her authorization in violation of the SECA or the CFAA.").

And while some courts have found a violation of the Act where an employee acquires computer information otherwise permitted to the employee for an improper purpose, Defendants respectfully submit that the decisions applying the more literal reading of the statute are more persuasive.  In a very recent decision by another district court, the court weighed the relative merits of both views:

> Defining "authorization" based upon the use of computer information, rather than upon the presence or absence of initial permission to access the computer, is in tension with both a plain reading of the Act and the manner in which the term "authorization" is used in other parts of the Act. Most prominently, it is inconsistent with the Act's use of the term "authorization" in its definition of "exceeds authorized access." See 18 U.S.C. § 1030(e)(6).

> Section 1030(e)(6) defines "exceeds authorized access" as "to access a computer *with authorization* and to *use such access* to obtain or alter information in the computer *that the accesser is not entitled so to obtain or alter.*" (emphasis in original). Thus, Section 1030(e)(6) contemplates that an "exceeds authorized access" violation occurs where the defendant first has initial "authorization"

to access the computer. But, once the computer is permissibly accessed, the use of that access is improper because the defendant accesses information to which he is not entitled. Under Citrin [440 F.3d 418 (7th Cir. 2006)] and Shurgard [119 F. Supp. 2d 1121 (W.D. Wash. 2000)], however, that distinction is overlooked. Under their reasoning, an employee who accesses a computer with initial authorization but later acquires (with an improper purpose) files to which he is not entitled--and in so doing, breaches his duty of loyalty--is "without authorization," despite the Act's contemplation that such a situation constitutes accessing "with authorization" but by "exceed[ing] authorized access." 18 U.S.C. § 1030(e)(6). The construction of Citrin and Shurgard thus conflates the meaning of those two distinct phrases and overlooks their application in § 1030(e)(6).

Under the more reasoned view, a violation for accessing "without authorization" occurs only where initial access is not permitted. And a violation for "exceeding authorized access" occurs where initial access is permitted but the access of certain information is not permitted. See Speed, 2006 U.S. Dist. LEXIS 53108, 2006 WL 2683058, at *5 (defining "without authorization" as "those below authorization, meaning those having no permission to access whatsoever" and defining "exceeds authorized access" as "those above authorization, meaning those that go beyond the permitted access granted to them--typically insiders exceeding whatever access is permitted to them"). Stated differently, a violation does not depend upon the defendant's unauthorized use of information, but rather upon the defendant's unauthorized use of access.[4] See

---

[4] The Court also noted in a footnote:

The legislative history supports this construction. In Werner-Matsuda, the court noted that the 1986 amendments to the CFAA support an interpretation of the CFAA that does not reach authorized access, but improper use, of information: Perhaps best illustrating this point is the fact that in 1986 Congress amended the CFAA to substitute the phrase "exceeds authorized access" for the phrase "or having accessed a computer with authorization, uses the opportunity such access provides for purposes to which such authorization does not extend." S. Rep. No. 99-432, at 9, U.S. Code Cong. & Admin. News 1986, pp. 2479, 2486. By enacting this amendment, and providing an express definition for "exceeds authorized access," the intent was to "eliminate coverage for authorized access that aims at 'purposes to which such authorization does not extend,'" thereby "remov[ing] from the sweep of the statute one of the murkier grounds of liability, under which a [person's] access to computerized data might be legitimate in some

> Speed, 2006 U.S. Dist. LEXIS 53108, 2006 WL 2683058, at *5
> (noting that the contrary interpretation "is aimed not so much at the
> [e]mployees' improper access of the [] information, but rather at the
> [e]mployees' actions subsequent to their accessing the
> information").

Diamond Power Int'l, Inc. v. Davidson, 2007 U.S. Dist. LEXIS 73032, 45-49 (N.D. Ga. Oct. 1, 2007).  Given that there was no dispute that the defendant in Diamond Power was authorized to initially access the plaintiff's computers, or that the defendant's level of authorized access included express permission (and password access) to obtain the very information he later disclosed to a third party, the court concluded that, as a matter of law, the defendant did not access the information at issue "without authorization" or in a manner that "exceed[ed] authorized access," and there was no violation of the Act.  Id. at 50-51.

As in the Diamond Power case, and notwithstanding its broad assertions concerning Bardelli's lack of authorization, Modis in the instant action can offer no set of facts to establish that Bardelli's alleged use of Modis' computers was without authorization or exceeded her authorization at the time that she allegedly accessed same.   Cf. Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will

---

circumstances, but criminal in other (not clearly distinguishable) circumstances that might be held to exceed his authorization." S. Rep. No. 99-432, at 21, U.S. Code Cong. & Admin. News 1986, pp. 2479, 2494-95.390 F. Supp. 2d at 499 n.12 (emphasis added).

Diamond Power Int'l, Inc. v. Davidson, 2007 U.S. Dist. LEXIS 73032, 49-50, n.18 (N.D. Ga. Oct. 1, 2007).

a40967.doc                    10

not suffice to prevent a motion to dismiss" from being granted.) (internal quotation marks and citation omitted).

Finally, Modis fails to allege the type of harm necessary in order to bring a claim against Bardelli under the Act.  Modis generally alleges that it suffered "losses" in excess of $5,000.[5]  Recoverable "losses" under the Act, however, are limited to the costs of analyzing and/or restoring the computer information and revenue lost "because of interruption of service".  18 U.S.C. § 1030(e)(11); see Nexans Wires S.A. v. Sark-USA, Inc., 166 Fed. Appx. 559, 562 (2d Cir. 2006) (holding that the plain language of the Act permits recovery of lost revenue "only where connected to an 'interruption of service'").[6]  Modis does not allege it incurred any costs analyzing and/or restoring the computer information (indeed, Modis does not allege that any information was altered or destroyed at all, but merely that it was emailed by Bardelli to her personal email address, see Complaint ¶38), or that it suffered any "interruption of service" as a result of the alleged wrongful conduct, thereby causing Modis to lose revenue (once again, there would have been no interruption of service as a result of Bardelli's alleged

---

[5] The Act requires a minimum annual loss of $5,000 based upon the type of conduct alleged here before a private cause of action accrues under the Act. See 18 U.S.C. § 1030(g).  See Nexans Wires S.A. v. Sark-USA, Inc., 166 Fed. Appx. 559, 562 (2d Cir. 2006) (explaining that the Act permits private civil enforcement, but only if the plaintiff can satisfy one of five factors, the applicable factor in that (and this) case being whether defendants' conduct caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $ 5,000 in value") (citing 18 U.S.C. § 1030(a)(5)(B)(1)).

[6] The trial court's decision in Nexans includes an insightful examination of the legislative history of the Act and various courts' interpretation of "loss", and determined that revenue lost because a defendant used unlawfully gained information to unfairly compete was not a type of "loss" contemplated under the Act.  See Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 474-478 (S.D.N.Y. 2004).

activities).  Modis' broad assertion that it suffered losses cannot satisfy the pleading requirements under the Act.  See Nexans Wires S.A., 166 Fed. Appx. at 562-563 (determining that plaintiff's asserted loss of $10 million is not a cognizable loss under the Act because no interruption of service occurred in the case); see also L-3 Communs. Westwood Corp. v. Robicharux, 2007 U.S. Dist. LEXIS 16789, at * 11-12 (E.D. La. Mar. 8, 2007) (determining that plaintiffs had not alleged a cognizable loss under the Act because they had not asserted that there was damage to their computers or an interruption of service); Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd., 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (citing the district court in Nexans, and ruling that loss of "competitive edge" claim not caused by computer impairment or computer damage was not cognizable under the Act);  Resdev, LLC v. Lot Builders Ass'n, 2005 U.S. Dist. LEXIS 19099, at *10-12 (M.D. Fla. Aug. 10, 2005) (similar); see generally Register.com, Inc. v. Verio, Inc., 126 F. Supp. 2d 238, 252 n.12 (S.D.N.Y. 2000) ("Although lost good will or business could provide the loss figure required . . ., it could only do so if it resulted from the impairment or unavailability of data or systems.") (construing earlier version of current statute), aff'd, 356 F.3d 393 (2d Cir. 2004).

Having failed to allege the basic jurisdictional elements of a claim under the Act, i.e., that the conduct involved interstate commerce or communications, that the specific computer accessed by Bardelli was used in interstate commerce or communications, that Bardelli's access of Modis' computer was unauthorized or exceeded her authorization, or that Modis suffered losses as that term is

a40967.doc                                     12

defined under the Act, Modis cannot maintain its claim under the Act.

Accordingly, Count One of the Complaint must be dismissed.  See, e.g., Nexans

Wires S.A., 166 Fed. Appx. at 562-563 (affirming entry of judgment in

defendant's favor due to plaintiff's failure to adduce sufficient evidence of the

requisite $5,000 loss); Civic Ctr. Motors, Ltd., 387 F. Supp. 2d at 382 (dismissing

plaintiff's claim under the Act because the allegations of losses in the complaint

fail to state a valid claim for relief); Diamond Power Int'l, Inc., 2007 U.S. Dist.

LEXIS 73032, at *50 (granting judgment in favor of defendant under the Act

because the defendant did not access the information at issue "without

authorization" or in a manner that "exceed[ed] authorized access").

　　　　　B.　　　Count Five: Implied Covenant of Good Faith and Fair Dealing

　　　　　In Count Five, Modis reiterates its allegations in support of its breach of

contract claim against Bardelli, and asserts that such conduct also constitutes a

breach of the implied covenant of good faith and fair dealing.  See Complaint ¶¶

69-72.  This Count is legally insufficient, however, because it fails to allege any

conduct constituting bad faith.

　　　　　"Every contract carries an implied covenant of good faith and fair dealing

requiring that neither party do anything that will injure the right of the other to

receive the benefits of the agreement." Gupta v. New Britain General Hospital,

239 Conn. 574, 598 (1996) (internal quotation marks and citations omitted); see

also Macomber v. Travelers Property & Casualty Corp., 261 Conn. 620, 638

(2002). In order to establish a lack of good faith or, conversely, bad faith, a party

is required to show more than bad judgment or negligence or mistake. Elm Street

Builders v. Enterprise Park Condominium, 63 Conn.App. 657, 667-68 (2001); see also Miller v. Guimaraes, 78 Conn.App. 760, 773 (2003). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to ones rights or duties, but by some interested or sinister motive.  Bad faith means more than mere negligence; it involves a dishonest purpose." Habetz v. Condon, 224 Conn. 231, 237 (1992) (citations omitted).

Here, Modis has made no allegations of bad faith in its Complaint.  Rather, it merely restates its allegations in support of its breach of contract claim as a breach of the implied covenant of good faith and fair dealing.  Failing to allege that Bardelli's conduct was motivated by some "sinister motive", Count Five of the Complaint fails to state a claim and must be dismissed.  See, e.g., Pediatric Occupational Therapy Servs. v. Town of Wilton, 2004 Conn. Super. LEXIS 893, 20-21 (Conn. Super. Ct. April 7, 2004) (in restrictive covenant case alleging bad faith, entering judgment in defendant's favor due to plaintiff's failure to proffer facts evidencing that the defendant's conduct was motivated by bad faith, stating: "The mere act of soliciting and hiring a business's employee without more is insufficient to show the improper or sinister motive required for a finding of bad faith.").

C.    Count Six: Conversion

In Count Six, Modis alleges that Bardelli's alleged misappropriation of the confidential information and trade secrets of Modis constitutes conversion.  See

Complaint ¶¶ 73-77.  This Count fails to state a claim upon which relief may be granted, however, because the property allegedly taken by Bardelli is intangible property that cannot be the subject of a conversion claim.

"In Connecticut, intangible property interests have not traditionally been subject to the tort of conversion, except for those intangible property rights evidenced in a document."  Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 44 (2000).[7] Accord Aetna Life & Casualty Co. v. Union Trust Co., 230 Conn. 779, 790 n.6 (1994) ("the tort of conversion has traditionally been confined to chattels. . . .").  Thus, Modis' claim of theft of its confidential customer and candidate information does not properly fall under common-law conversion.  See, e.g., Pepe & Hazard v. Jones, 2002 Conn. Super. LEXIS 3355, at * 5-6 (Conn. Super. Ct. Oct. 15, 2002) (concluding theft of intangible property such as confidential personnel and client information and business and strategic plans would not fall under common-law conversion).

Count Six of the Complaint must, therefore, be dismissed.

D.    Counts Eight and Nine: Tortious Interference with Contractual/Business Relations

Modis alleges in Count Eight that Bardelli's conduct, in allegedly diverting or actively attempting to divert from Modis its customers and consultants, candidates and placement opportunities, constitutes tortious interference with Modis' contractual and/or advantageous business relationships with those customers, candidates and/or consultants.  See Complaint ¶¶ 83-85.  In Count

---

[7] This case does not involve intangible property rights evidenced in a document, such as a bank passbook. See Devitt v. Manulik, 176 Conn. 657, 662-63 (1979).

Nine, Modis alleges that Edge's alleged inducement of Bardelli to breach her
employment agreement with Modis by leaving Modis' employ and going to work
for Edge in the same capacity, constitutes tortious interference with Modis'
contractual and/or advantageous business relationship with Bardelli.  See id. ¶¶
86-90.  Nowhere in these counts, however, does Modis allege any tortious
conduct by either Bardelli or Edge.  Lacking such a necessary allegation, these
counts must be dismissed.

      It is well established that a tortious interference claim requires proof that
the defendant's conduct was in fact tortious.  See Blake v. Levy, 191 Conn. 257,
261(1983).  The Connecticut Supreme Court has made clear in this regard that
"not every act that disturbs a contract or business expectancy is actionable" and
"every act of interference is not . . . made tortious."  Id. at 260-261.  Rather, in
order to make such a claim, the plaintiff must "plead and prove at least some
improper motive or improper means.  A claim is made out only when interference
resulting in injury to another is wrongful by some measure *beyond the fact of the
interference itself*."  Id. at 262 (internal citations and quotations omitted)
(emphasis added).

      Tortious conduct may be established "by proof that the defendant was
guilty of fraud, misrepresentation, intimidation or molestation . . . or that the
defendant acted maliciously."  Blake, 191 Conn. at 261 (internal quotation marks
and citations omitted).  Modis alleges none of these things in its Complaint.  In
fact, noticeably absent from Modis' allegations in Counts Eight and Nine of the
Complaint is any reference to "tortious" conduct by the defendants at all.  The

word "tortious" does not appear <u>at all</u> in the allegations of Count Eight of the Complaint.  In Count Nine, Modis claims in paragraph 90 that it will be irreparably harmed if Edge is "allowed to continue to tortiously interfere with Modis' contracts", but makes no affirmative allegations of any specific tortious conduct on the part of Edge.

In support of its claims, Modis merely relies upon its allegations that Bardelli has diverted business opportunities from Modis and that Edge induced Bardelli to breach her employment agreement by coming to work for Edge. Having omitted the necessary allegations of improper motive or means, Modis' claims of tortious interference with contractual and/or business relations must fail. <u>See, e.g.</u>, <u>Robert S. Weiss and Assocs., Inc. v. Weiderlight</u>, 208 Conn. 525, 535-537(1988) (in action for breach of restrictive covenant alleging that new employer tortiously interfered with plaintiff's business relations by encouraging employee to undertake conduct in violation of restrictive covenant when defendant employer knew or should have known of the covenant's terms, directing judgment in defendant's favor because plaintiff's complaint omitted the necessary allegation of improper motive or means, expressly noting that the court may not look beyond the complaint for facts not alleged); <u>Sanford Hall Agency, Inc. v. Dezanni</u>, 2004 Conn. Super. LEXIS 3574 (Conn. Super. Ct. Dec. 2, 2004) (in factually similar case, entering judgment for defendant employer on tortious interference claim because, while the defendant new employer hired employee in violation of restrictive covenant, the plaintiff did not allege and prove any malice on the part of the defendant employer, expressly noting: "While hiring one of the plaintiff's

employees may be viewed as an interference with the plaintiff's business, it does not mean that it is tortious since not all interference is considered to be tortious."); Pediatric Occupational Therapy Servs. v. Town of Wilton, 2004 Conn. Super. LEXIS 893 (Conn. Super. Ct. April 7, 2004) (in restrictive covenant case alleging tortious interference against new employer, entering judgment in defendant's favor due to plaintiff's failure to proffer facts which indicate that the defendant employer used any improper means or harbored any improper motive in hiring the defendant employees, explaining: "The mere allegation that the [defendant employer] knew of the plaintiff's contract with [the defendant employees], including its clause that [they] not accept a position with a customer of the firm, and that the [defendant employer] hired the employees in alleged violation of that contract, is insufficient to prove a claim of intentional interference with contract.").[8]

In light of Modis' failure to allege any tortious conduct on the part of Bardelli or Edge, Counts Eight and Nine of the Complaint must be dismissed. And because Count Nine is the only count directed toward Edge, Edge must, therefore, be dismissed as a defendant in this action.

---

[8] Defendants also note that Modis' Complaint does not even allege that Edge was aware of the limitations set forth in Bardelli's employment contract with Modis at the time that Edge hired Bardelli. In this regard, Modis fails to allege another key element of a tortious element claim against Edge, namely Edge's knowledge of the contractual relation at issue. See Appleton v. Board of Education, 254 Conn. 205, 212-13 (2000). ("A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) *the defendants' knowledge of that relationship*, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct.") (internal quotation marks omitted) (emphasis added).

## IV.    CONCLUSION

For the reasons set forth above, Counts One, Five, Six, Eight and Nine of the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that they fail to state claims upon which relief may be granted, and Edge Technology Services, Inc. should, therefore, be dismissed as a defendant in this matter.

DEFENDANTS TRISHA BARDELLI and
EDGE TECHNOLOGY SERVICES, INC.


By:___ _s/ Rowena A. Moffett_____
Rowena A. Moffett, Esq. (ct19811)
BRENNER, SALTZMAN & WALLMAN LLP
Their Attorneys
271 Whitney Avenue
New Haven, Connecticut 06511
Phone: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

                            *s/ Rowena A. Moffett*
                            Rowena A. Moffett