## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MODIS, INC.,

        Plaintiff,

vs.

        CASE NO.: 3:07-CV-01638 (WWE)

TRISHA BARDELLI and EDGE
TECHNOLOGY SERVICES, INC.,

        Defendants.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Modis, Inc. ("Modis"), by and through its undersigned counsel, responds to the Motion to Dismiss filed by Defendants Trisha Bardelli ("Bardelli") and Edge Technology Services, Inc. ("Edge") (collectively "Defendants") as follows:

### I.    Procedural Background

1.    On November 7, 2007, Modis initiated this action when it filed its Complaint, which was amended on November 27, 2007.

3.    On December 4, 2007, Modis filed a Motion for Preliminary Injunction and Supporting Memorandum of Law.

4.    On December 21, 2007, Defendants filed a Motion for Extension seeking to respond to Modis' Motion for Preliminary Injunction by January 18, 2008.  Defendants' motion was granted on December 27, 2007.

4.    On December 28, 2007, Defendants filed a Motion to Dismiss, with supporting Memorandum of Law ("Memorandum").

## II.    Standard for Ruling on a Motion to Dismiss

When considering a Rule 12(b)(6) motion to dismiss, this court must accept as true all factual allegations in the complaint and draw inferences from these allegations in the light most favorable to plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Control Module, Inc. v. Data Management Inc.*, 2007 WL 4333814 at *2 (D.Conn. 2007). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). *See also Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Mytych v. May Dept. Store Co.,* 34 F.Supp.2d 130, 131 (D.Conn. 1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir. 1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F. Supp 784, 786 (D.Conn. 1990) (citing *Scheuer,* 416 U.S. at 232). Detailed factual allegations are not necessary, although merely reciting the elements of a cause of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007);

In *Twombly*, the United States Supreme Court recently articulated the standard to survive a Rule 12(b)(6) motion as follows:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's

> elements will not do. Factual allegations must be enough to raise a
> right to relief above the speculative level on the assumption that all
> of the complaint's allegations are true.

*Id*. at 1959 (internal citations omitted). The allegations in this case, as set forth in the Amended Complaint, are not mere labels and conclusions and are sufficient to "raise a right of relief above the speculative level." Because the allegations of the Amended Complaint provide grounds for the relief sought, they meet the standard stated in *Twombly* and Defendants' Motion to Dismiss must be denied.

### II.     Legal Argument

### A.     Count One: Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act ("CFAA"), which "is primarily a criminal statute, punishes various fraudulent and damaging activities related to the use of computers." *Hewlett-Packard Co. v. Byd:Sign, Inc.* 2007 WL 275476 at *1 (E.D. Tex 2007). However, an individual may bring a civil action for damage arising from violations of the CFAA under 18 U.S.C. § 1030(g). *Id.* The CFAA provides:

> Whoever ... intentionally accesses a computer without
> authorization or exceeds authorized access, and thereby obtains ...
> information from any protected computer if the conduct involved
> an interstate or foreign communication ... shall be punished as
> provided [within the CFAA].

18 U.S.C. § 1030(a)(2)(C).

Defendants challenge the sufficiency of the Complaint's allegations in stating a cause of action under the CFAA. Defendants claim that Plaintiff "fails to allege several of the requisite jurisdictional elements." Memorandum, Pg. 4. Defendants argue the Complaint fails to state a claim under the CFAA because Plaintiff allegedly did not provide facts to support that:

1. "Bardelli's specific conduct involved an interstate or foreign communication." *Id.* at Pg. 6.

2. "[T]he specific computer accessed by Bardelli was a 'protected computer' in that it was used in interstate or foreign commerce or communication." *Id.*

3. "Bardelli's use of Plaintiff's computer was without authorization or exceeded her authorized access." *Id.* at Pg. 7.

4. Plaintiff suffered "the type of harm necessary in order to bring a claim against Bardelli under the Act."

Defendants' assertions regarding Plaintiff's CFAA claim are without merit, as demonstrated below.

**1.      Interstate or Foreign Communication**

Defendants claim that "Bardelli is alleged merely to have emailed certain contact information from her office computer in Meriden, Connecticut, to her personal email account and presumably accessed same at her home in Chester, Connecticut." Memorandum, Pg. 6. Thus, Defendants conclude that the Complaint fails to allege that "Bardelli's specific conduct involved an interstate or foreign communication." *Id.*

Defendants' Memorandum conspicuously ignores several other significant allegations present in the Amended Complaint, including:

(1)      Modis is a Florida corporation with its principal place of business in Jacksonville, Florida. *See* Amended Complaint, ¶ 6.

(2)      Bardelli is a Connecticut resident conducting business in Connecticut. *Id.* at ¶ 7.

(3)      Modis employed Bardelli in its office in Meriden, Connecticut. *Id.* at ¶ 11.

(4)      Modis uses its computers in interstate commerce or communication. *Id.* at ¶ 46.

4

(5)     Modis' trade secret compilation of client, candidate and consultant specific information is maintained in its secured database called COSMOS. *Id.* at ¶ 17.

(6)     Bardelli used Modis' email and COSMOS database about its clients for her own purposes.[1] *Id.* at ¶ 27

(7)     Bardelli used Modis' email system and accessed Modis' COSMOS database on her Modis working time apparently for the benefit of a competitor. *Id.* at ¶ 38.

Indeed, Defendants improvidently adopt both a very narrow interpretation of the allegations set forth in the Amended Complaint and a tenuous position that Plaintiff must provide factually detailed allegations well beyond the "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1959. The facts offered to support Plaintiff's CFAA claim adequately are sufficient to survive a motion to dismiss and the above well-established pleading principles run counter to Defendants' position.

Based upon these additional allegations, which Defendants' conspicuously ignore, the Amended Complaint states that Bardelli used Modis' computers, which are used in interstate commerce or communications, to misappropriate confidential and proprietary information. This is sufficient to put Defendants on fair notice that they allegedly utilized Plaintiff's computers, which were used for interstate communications, to access Plaintiff's confidential information such that the allegations "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S.Ct. at 1959.

**2.     Protected Computer**

As used within the CFAA, the term "protected computer" is defined as a computer "which is used in interstate or foreign commerce or communication." 18 U.S.C. §1030(e)(2)(B).

---

[1] While detailed allegations are not necessary to state a claim, Modis' email server and COSMOS database are in fact both housed in a secure server in Jacksonville, Florida.

Defendants conclusively assert "the broad allegation that Modis generally utilizes its computers in interstate commerce in no way meets the jurisdictional requirements for a claim against Bardelli under the Act." *Id*. However, in addition to alleging Modis uses its computers in interstate commerce, the Amended Complaint alleges that Bardelli used Modis' computers to misappropriate its confidential and trade secret information. *See id*. at ¶¶27 and 38.

Defendants cite no authority for their proposition that in order for a Plaintiff to plead a CFAA claim that will survive a Rule 12(b)(6) Motion to Dismiss, the identity of the specific computer within its system of computers is required. In fact, the three opinions cited by Defendants are not on-point to this argument and were not even resolving motions to dismiss, but instead were each deciding the merits motions seeking summary judgment. *See Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F.Supp.2d 627, 646-47 (E.D. Pa. 2007); *Credentials Plus, LLC v. Calderone*, 230 F.Supp.2d 890, 906 (N.D. Ind. 2002); and *America Online, Inc. v. Nat'l Health Care Discount, Inc.*, 174 F.Supp.2d 890, 899 (N.D. Iowa 2001). The "specific computer" assessed by Bardelli will be discovered and analyzed during discovery. The allegations in the Amended Complaint that Bardelli used Modis' computer, which was used in interstate activity, are sufficient to put Defendants on notice that Plaintiff has "raise[d] a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S.Ct. at 1959.

### 3.   Without Authorization or Exceeded Authorization

The CFAA, 18 U.S.C. § 1030(a)(2)(C), states that "[w]hoever ... intentionally accesses a computer without *authorization or exceeds authorized access*, and thereby obtains ... information from any protected computer if the conduct involved an interstate or foreign communication ... shall be punished as provided [within the CFAA]." (Emphasis supplied).

"[T]he term 'exceeds authorized access' means to access a computer with authorization and to use such access *to obtain or alter information in the computer that the accesser is not entitled to obtain or alter*." 18 U.S.C. §1030(e)(6) (Emphasis supplied). The CFAA does not define "authorization," "authorized access," or "without authorization."

In the Amended Complaint, ¶47, Plaintiff alleges "Defendant Bardelli *intentionally accessed Modis' Database without authorization and/or exceeded her authorized access,* and transferred information outside of Modis to her own possession, thereby misappropriating and obtaining valuable confidential, proprietary and trade secret information belonging to Modis." (Emphasis supplied).

Defendants argue that Plaintiff "fails to establish the necessary criterion that Bardelli's use of Plaintiff's computer was without authorization or exceeded her authorized access." Memorandum, Pg. 7. Defendants claim: "[w]hile Modis broadly alleges that 'Bardelli accessed Modis' Database without authorization and/or exceeded her authorized access', the underlying facts as alleged cannot support such an assertion, as Bardelli clearly was 'authorized' to conduct the alleged database searches as a Modis employee." Memorandum, Pg. 7. (internal citation omitted).

As a threshold matter, Plaintiff's allegations are sufficient to put Defendants on notice that Bardelli exceeded her authority when she misappropriated Plaintiff's trade secret information for her own use. Defendants Memorandum argues Bardelli was authorized to access the information she misappropriated, conveniently ignoring that a plaintiff's allegation that a defendant "exceeded authorized access" is sufficient to state a claim under the CFAA.

Several courts have concluded that an employer can state a CFAA claim where the employee exceeds his or her authorization or may act without authorization when the employee

obtains proprietary information from the former employer's computers and uses that information in a competing venture. *See International Airport Ctrs., L.L.C. v. Citrin,* 440 F.3d 418, 420-21 (7th Cir. 2006) (reversing dismissal of CFAA claims where employee went into business for himself and used "scrubbing" software to delete all of the files on his company-issued computer); *EF Cultural Travel BV v. Explorica, Inc.,* 274 F.3d 577, 582-84 (1st Cir. 2001) (finding that employer was likely to prove access in excess of authorization where former employee obtained proprietary information and then provided that information to his new employer in violation of his confidentiality agreement.); *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.,* 119 F.Supp.2d 1121 (W.D.Wash. 2000) (finding that the employee acted without authorization when he obtained proprietary information from his former employer's computers for the benefit of his new employer).

To support Defendants' position, they note several courts have questioned key holdings within *Citrin* and *Shurgard. See In re AOL, Inc.,* 168 F.Supp.2d 1359, 1370 (S.D. Fla. 2001); *Lockheed Martin Corp. v. Speed,* 2006 WL 2683058 (M.D. Fla. 2006); and, *Int'l Ass'n of Machinests & Aero. Workers v. Werner-Matsuda,* 390 F.Supp.2d 479, 498 (D.Md. 2005). However, these cases do not speak specifically to Plaintiff's allegation that Defendants used employer-provided computers and email systems to conduct the business of a competing venture. *See Byd:Sign, Inc.,* 2007 WL 275476 at *13 (E.D.Tex. 2007). Hence, Defendants fail to show that the allegations in Plaintiff's Amended Complaint are insufficient to state a claim with regard to whether Bardelli intentionally accessed its computers "without authorization or exceed[ed] authorized access," pursuant to §1030(a)(2)(C).

In the Amended Complaint, Plaintiff alleged "Defendant Bardelli also utilized Modis' electronic mail ("email") system on her working time at Modis *to her advantage and contrary to*

8

*Modis' best interests* and accesssed, without authorization, extensive information in Modis' database about its clients *for her own purposes*." Amended Complaint, ¶37 (Emphasis supplied). Moreover, the Employment Agreement entered into between Bardelli and Plaintiff, which was attached to the Amended Complaint, specifically states:

> Employee recognizes that all materials, … computer software and hardware, manuals, data bases, client and consultant lists, discs, tapes, pagers and phones and equipment Modis provides for Employee are the property of Modis exclusively.  All items described in this …. paragraph are collectively referred to as 'Modis Property' and Employee shall refrain from taking or reproducing or allowing to be taken or reproduced any Modis Property except in furtherance of Modis' Business.

Amended Complaint, Exhibit A, ¶12.  Thus, Bardelli's use of Modis' computer systems for purposes other than the furtherance of Modis' business contradicts Defendants' argument that Bardelli was authorized as defined in the CFAA.[2]

In this case, Bardelli not only agreed to refrain from misappropriating and disclosing Plaintiff's confidential and proprietary information, she also agreed to use Plaintiff's computer-related systems for business purposes only.  *See Byd:Sign, Inc.*, 2007 WL 275476 at *13 (E.D.Tex. 2007).  Therefore, the allegations, as stated in the Amended Complaint are sufficient to put Defendants on notice that Plaintiff's conduct was without authorization and they "raise[d] a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S.Ct. at 1959.

---

[2] Modis is not required at this stage to provide detailed factual allegations, but Bardelli's lack of authorization will also be demonstrated because Modis has specific policies that include admonitions that its computer and email systems are to be used for company business purposes only.  Misappropriating Modis' confidential information and using Modis' email system to send the misappropriated information away from Modis to be used by a competitor is clearly unauthorized pursuant to Bardelli's Employment Agreement and company policy.

### 4. Damage or Loss

A complaint under the CFAA need merely allege that the plaintiff suffered a "damage *or* loss" as defined in the CFAA. See 18 U.S.C. § 1030(g) (emphasis supplied). The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "Loss" is defined as: *"any reasonable cost to any victim,* including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis supplied). It should be noted that the definition of "loss" means "any reasonable cost to any victim"; the language of the clause reflects that this "reasonable cost" is not constrained to the inclusive costs listed within the CFAA definition.

Defendants assert that Plaintiff failed to adequately plead "the type of harm necessary in order to bring a claim against Bardelli" under the CFAA because it "does not allege it incurred any costs analyzing and/or restoring the computer information . . . or that it suffered any 'interruption in service' as a result of the alleged wrongful conduct, thereby causing Modis to lose revenue." Memorandum, Pg. 11. Again, Defendants adopt a self-serving and inappropriately narrow view of the CFAA's definitions. Defendants' contention that the loss alleged within the Complaint cannot satisfy the statutory requirement of damages is inconsistent with the definition contained within the statute itself. *See George S. May Intern. Co. v. Hostetler,* 2004 WL 1197395, *4 (N.D.Ill. 2004) (holding in a factually similar case that there is "no principled reason, nor has [Defendant] offered one, why infringement of copyrighted material taken from a protected computer system would not qualify as impairment of the integrity of the copyrighted information").

Moreover, Plaintiff's allegations of misappropriation of confidential and proprietary information are sufficient to constitute "damage or loss" under the CFAA. Indeed, a number of federal courts have held that the misappropriation of confidential information constitutes damage or loss under the CFAA. See e.g., *George S. May Intern. Co. v. Hostetler*, 2004 WL 1197395, *4 (N.D.Ill. 2004) (finding that allegations of misappropriation sufficient to show damage under the CFAA and survive dismissal); *C.H. Robinson Worldwide, Inc. v. Command Transp., LLC*, 2005 WL 3077998, *3 (N.D.Ill. 2005) (stating plaintiff "has properly alleged 'loss' under the CFAA based on its allegations of the loss in value of trade secrets and loss of competitive edge"); *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121 (W.D.Wash. 2000) (finding plaintiff stated a damage claim even though the misappropriation did not affect the integrity of the trade secrets within the employer's computers where the employer suffered loss in the form of expenses incurred in modifying its computers to preclude further unauthorized data transfer); *Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F.Supp.2d 1188, 1195-97 (E.D.Wash. 2003) (stating the "[c]aselaw supports employer's use of CFAA's civil remedies to sue former employee and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer systems.").

It is proper to use the CFAA's civil remedies for relief against former employees and their new companies who seek a competitive advantage through wrongful use of information from the former employer's computer systems. See <u>Charles Schwab & Co. v. Carter</u>, 2005 WL 351929, *3 (N.D.Ill. 2005) (Plaintiff alleged Defendant's new employer induced Defendant employee to copy computer information, resign from Plaintiff, accept offer of new employment and deliver copied material to Defendant's new employer); <u>Dudick, ex rel. Susquehanna Precision, Inc. v. Vaccarro</u>, 2007 WL 1847435 (M.D.Pa. 2007) (Defendants created new

company and without Plaintiff's knowledge used Plaintiff's computers, including its computer programs and equipment, to divert Plaintiff's proprietary and confidential information received from a large client to Defendants' newly formed entity); <u>Nilfis-Advance, Inc. v. Mitchell</u>, 2006 WL 827073, *2 (W.D.Ark. 2006) (Defendant, an engineer developing certain new products for Plaintiff, transmitted confidential information and trade secrets from his work computer to his home computer, with the intent of conveying that information to Plaintiff's competitors).

Thus, Plaintiff's allegations as to the "damage or loss" resulting from Bardelli's misappropriation of its confidential and proprietary information are sufficient to put Defendants on notice that Plaintiff has "raise[d] a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S.Ct. at 1959.

### 4.    <u>Conclusion Concerning Plaintiff's CFAA Claims</u>

The CFAA, among its other purposes, "is intended to punish those who illegally use computers for commercial advantage." <u>Shurgard</u>, 119 F.Supp.2d at 1129.  The issue for this Court to consider is whether that Plaintiff's allegations are sufficient to satisfy federal notice pleading standards.  The Second Circuit recently stated while considering a Rule 12(b)(6) motion to dismiss:

> At this stage of litigation, plaintiffs need not plead a *prima facie* case and may withstand a motion to dismiss by meeting a lesser standard.  Plaintiffs need only comply with Rule 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims . . .and the grounds upon which those claims rest.

*See Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 Fed.3d 229, 238 (2nd Cir. 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  Plaintiff has sufficiently alleged a claim under the CFAA against Bardelli and Edge.  Plaintiff's allegations provide, at the very least,

sufficient minimal notice of the claim, and Defendants cannot say that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  Since the allegations in Count One of Plaintiff's Complaint are sufficient to show it is entitled to relief and state a cause of action under the CFAA, Plaintiff's motion seeking dismissal of Count One must be denied.

**B.     Count Five: Implied Covenant of Good Faith and Fair Dealing**

Under Connecticut law:

> Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.... Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended.... Conversely, [b]ad faith means more than mere negligence; it involves a dishonest purpose.

*Barber v. Jacobs*, 58 Conn.App. 330, 338 (Conn.App. 2000) (citing *Middletown Commercial Associates Ltd. Partnership v. Middletown,* 53 Conn.App. 432, 437, cert. denied, 250 Conn. 919, 738 A.2d 657 (Conn. 1999)) (Citations omitted; internal quotation marks omitted.) .

In the instant case, Defendant claims the Amended Complaint does not contain allegations of bad faith because Plaintiff failed "to allege that Bardelli's conduct was motivated by some 'sinister motive.'"  Defendant's Memorandum, Pg. 14.  Plaintiff's allegations do constitute bad faith and are significantly more than mere negligence.  Indeed, Plaintiff has alleged Bardelli "devised and implemented" a "scheme" while employed at Modis to "convert, conceal and misappropriate Modis' trade secrets and other confidential proprietary information in furtherance of her plan to unfairly compete with Modis and tortiously interfere with its contractual relations."  *See* Amended Complaint, ¶2.  Even if, *arguendo*, Plaintiff's allegations that Bardelli "devised and implemented" a "scheme … to covert, conceal and misappropriate"

were insufficient to demonstrate more than mere negligence, Plaintiff also specifically alleged that Bardelli's conduct was willful, intentional, and not privileged. *Id.* at ¶43.

Thus, the Amended Complaint sufficiently asserts that Bardelli's conduct was indeed motivated by some "sinister motive," contrary to Defendants' assertions and are sufficient to put Defendants on notice her conduct was significantly more than merely negligent.  Therefore, since the allegations in Count Five of Plaintiff's Complaint are sufficient to show it is entitled to relief and state a cause of action under the CFAA, Plaintiff's motion seeking dismissal of Count Five must be denied.

### C.      Count Six: Conversion

The tort of "[c]onversion occurs when one, *without authorization,* assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Wellington Systems, Inc. v. Redding Group, Inc.,* 49 Conn.App. 152, 169, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (Conn. 1998). (Emphasis in original).  Conversion is:

> some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm.

*Falker v. Samperi,* 190 Conn. 412, 419-420 (Conn. 1983); *see also Deming v. Nationwide Mut. Ins. Co.,* 279 Conn. 745, 770 (Conn. 2006) (essence of conversion is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm).

Defendants assert Plaintiff cannot state a claim upon which relief may be granted because the property allegedly taken by Bardelli is intangible property that cannot be subject to a conversion claim.  Defendants cite *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,* 255 Conn. 20, 44

(Conn. 2000), for the proposition that "[i]n Connecticut, intangible property interests have not traditionally been subject to the tort of conversion, *except for those intangible property rights evidenced in a document.*"  *Id.* (Emphasis supplied).  In this case, Plaintiff's intangible property rights are evidenced in Bardelli's employment agreement, which is extensively referred to and included as an exhibit in the Amended Complaint.  Moreover, since Plaintiff alleged Bardelli emailed its confidential and proprietary information for her own use and contrary to the interests of Plaintiff, Bardelli's emails themselves constitute documents evidencing Plaintiff's intangible property.

Defendants cite *Pepe & Hazard v. Jones*, 2002 WL 31460309 (Conn.Super. 2002), to support their proposition that theft of Plaintiff's confidential and proprietary information is not subject to the tort of conversion.  However, Defendants use of *Pepe & Hazard* for this purpose is without merit and distinguishable from the case at bar because the defendant in that case was not subject to an Employment Agreement evidencing the plaintiff's intangible property rights.  Additionally, *Pepe & Hazard* was not deciding the sufficiency of allegations for purposes of withstanding a motion to dismiss.  Instead, *Pepe & Hazard* was determining whether a party had a right to trial by jury under the state constitution.  Thus, since the allegations in Count Six of Plaintiff's Complaint are sufficient to show it is entitled to relief and state a cause of action for conversion, Plaintiff's motion seeking dismissal of Count Six must be denied.

**D.    Counts Eight and Nine: Tortious Interference with Contractual/Business Relations**

In *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 27, 761 A.2d 1268 (Conn. 2000), the Connecticut Supreme Court stated: "It is well established that the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the

plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *Id.*

Defendants haphazardly declare in their Memorandum that Plaintiff does not allege "any tortious conduct by either Bardelli or Edge. Lacking such a necessary allegation, these counts must be dismissed." Memorandum, Pg. 16. Defendants cite *Blake v. Levy*, 191 Conn. 257, 261 (Conn. 1983) for the proposition that "not every act that disturbs a contract or business expectancy is actionable" and "every act of interference is not . . . made tortious." *Id.* "Tortious conduct may be established "by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." *Id.*, 191 Conn. at 262.

However, in *Blake*, 191 Conn. at 262, the Connecticut Supreme Court also adopts the factors of 4 Restatement (Second), Torts § 767 (1979) to consider in determining whether the alleged interference is improper. *Id.* The applicable factors include:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties."

*Id.*

In this case, the nature and motive of Defendants' conduct are tortious, and sufficiently alleged as such. Defendants' conduct as alleged was adverse to Plaintiff's interests and in violation of Bardelli's Employment Agreement. Defendants sought to advance their own interest and the expense of Plaintiff and there is a strong social interest in preserving the enforceability of

contractual agreements.   Furthermore, Bardelli's misappropriation of Plaintiff's confidential information is contemporaneous with her transition to a direct competitor.   Hence, Plaintiff's allegations that it had significant business and contractual relationships that were tortiously interfered with in the matter described below are sufficient to support a claim of tortious interference against Bardelli and Edge.

### 1.    Plaintiff Alleged it had Significant Business Relationships

The Amended Complaint asserts significant business relationship between Plaintiff and its clients.   In fact, Bardelli specifically acknowledged that "Modis has legitimate business interests in protecting its confidential business and trade secret information, its substantial relationships with clients, consultants and employees and its client, consultant and employee goodwill and/or extraordinary or specialized training" in the Employment Agreement attached to the Amended Complaint.   Amended Complaint, Exh. A, ¶4.   The Amended Complaint also asserts"   •

o   "Modis has invested substantial time and money to identify those businesses and firms that actually wish to use temporary, direct, or temporary-to-direct IT personnel and to develop substantial relationships with them." Amended Complaint, ¶14.

o   "Modis invested substantial time and money to develop and maintain those legally unique relationships with and confidential information about certain of Modis' clients and their staffing preferences, the types of candidate with which Modis works, and Modis' strategies for developing and expanding business." *Id.* at ¶23.

o   "Modis has had substantial and ongoing contractual and/or business relationships with its customers identified above and with various consultants and/or candidates and

placement opportunities that Defendant Bardelli has diverted and/or is actively attempting to divert from Modis." *Id.* at ¶84.

o   "Modis has had a substantial and ongoing contractual and business relationship with Defendant Bardelli." *Id.* at ¶87.

The allegations made pertaining to Plaintiff's significant business interests are sufficient to put Defendants on notice that Plaintiff has "raise[d] a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S.Ct. at 1959.

**2.     Plaintiff Alleged Bardelli and Edge's Intentional Interference**

Plaintiff alleged Bardelli intentionally interfered with its substantial client relationships while knowing of the relationships. *See* Amended Complaint, ¶¶37-39.   The Amended Complaint also states that "Bardelli intentionally and unjustifiably interfered with Modis' contractual and/or advantageous business relationships." *Id.* at ¶85.   With regard to Edge, Plaintiff alleged: "[u]pon information and belief, a representative of Defendant Edge Technology has communicated with a current Modis client, advising that Modis' best recruiter, referring to Bardelli, left Modis and accepted employment with Edge Technology." *Id.* at ¶41.   "Defendant Edge Technology's representative has also communicated negatively about Modis to at least one Modis client." *Id.*   "Defendant Edge Technology has intentionally and unjustifiably interfered with Modis' contractual and/or advantageous business relationship with Defendant Bardelli." *Id.* at ¶88.   The allegations made pertaining to the intentional interference of Bardelli and Edge are sufficient to put Defendants on notice that they intentionally interfered with Plaintiff's contractual relations and "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S.Ct. at 1959.

### 3.    Plaintiff Alleged Resulting Actual Loss Due to Intentional Interference

Plaintiff alleges that "as a result of Bardelli's and Edge's actions, Plaintiff "stands to suffer, and will continue to suffer, irreparable harm for which there is no adequate remedy at law [and is] presently impossible to quantify." Amended Complaint, ¶42. Plaintiff further alleged that it "is threatened with the erosion and loss of client relationships, loss of candidates for placement, loss of goodwill, and loss of [its] confidential information." *Id*. Finally, Plaintiff asserted that "Defendant Edge Technology has intentionally and unjustifiably interfered with Modis' contractual and/or advantageous business relationship with Defendant Bardelli, resulting in damages to Modis." *Id*. at ¶89. The allegations of actual loss suffered due to intentional interference put Defendants on notice that Plaintiff has "raise[d] a right to relief above the speculative level on the assumption that all of the allegations are true." *Twombly*, 127 S.Ct. at 1959. Therefore, Plaintiff has sufficiently plead tortious interference with its contractual and business relations and Defendants' motion seeking dismissal of Counts Eight and Nine must be denied.

### Conclusion

Defendants' arguments for dismissal of Counts One, Five, Six, Eight and Nine of the Amended Complaint are without merit. Throughout Defendants' Memorandum, Defendants selectively represent only part of the factual allegations present in the Amended Complaint. The allegations as set forth in the Amended Complaint are sufficient to "raise a right of relief above the speculative level" and meet the well-established notice pleading standards. Plaintiff's Amended Complaint states a cause of action in each Count challenged by Defendants. Therefore, Defendants' Motion to Dismiss must be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 11, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Rowena A. Moffett, Esq., Brenner, Saltzman & Wallman LLP, 271 Whitney Avenue, New Haven, Connecticut 06511.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: NONE.

/s Robert G. Riegel
Eric L. Sussman (ct19723)
Day Pitney LLP
242 Trumbull Street
6th Floor
Hartford, CT 06103
(860) 275-0276
elsussman@daypitney.com

*Admitted Pro Hac Vice*
Robert G. Riegel
Florida Bar No. 0325759
FOWLER WHITE BOGGS BANKER P.A.
50 North Laura Street, Suite 2200
Jacksonville, Florida 32202
Telephone: (904) 598-3100
Facsimile: (904) 598.3131
robert.riegel@fowlerwhite.com

Attorneys for Plaintiff