UNITED STATED DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MODIS, INC., : | |
| Plaintiff, : | |
| : | CASE NO. 3:07-CV-01638 (WWE) |
| V. : | |
| : | |
| TRISHA BARDELLI, ET AL., : | |
| Defendants. : | |
| : | JANUARY 21, 2008 |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants Trisha Bardelli ("Bardelli") and Edge Technology Services, Inc.

("Edge") (collectively, "Defendants") submit the instant memorandum in opposition to

Plaintiff Modis, Inc.'s ("Modis" or "Plaintiff") Motion for Preliminary Injunction dated

December 4, 2007 (doc. # 9).  By way of the instant action and Motion, Plaintiff seeks to

foreclose completely Bardelli's ability to work in the information technology consulting

service industry within a geographic area that essentially encompasses the entire state

of Connecticut and even reaches into Massachusetts and New York, based upon an

agreement that was entered into well after Bardelli became employed by Modis and for

no valid consideration, when Bardelli was forced to cease her employment at Modis due

to her discriminatory treatment by supervisors.  For these reasons, discussed further

below, and upon the Court's consideration of the evidence that will be adduced at the

hearing on Plaintiff's Motion scheduled to be held on January 30, 2008, Defendants

respectfully submit that Plaintiff's Motion for Preliminary Injunction should be denied.

**ORAL ARGUMENT REQUESTED**

## I.     BACKGROUND

As the Court will be hearing evidence concerning this matter at the upcoming preliminary injunction hearing, Defendants will not set forth herein a full recitation of the relevant facts.[1]  Rather, set forth below is a brief recap of the most salient facts relevant to the legal issues discussed in this memorandum.

Bardelli executed an Employment Agreement at the outset of her employment with Modis on June 19, 2000.  That Employment Agreement purported to restrict Bardelli, for a period of 18 months following the termination of her employment, from, inter alia: (a) recruiting any person employed or contracted with Modis (at any of its offices) at any time during the previous 12 months; (b) soliciting or accepting business from any clients of Modis' Meriden branch office which were clients during the previous 12 months or during the 18 month non-solicitation period; and (c) being employed in a similar capacity by any competitive business within a 100 mile radius of Modis' Meriden branch office.  (See Pl.'s Compl., Ex. A ¶ 16.)  In apparent recognition of the overbroad and unenforceable nature of such restrictions, Modis presented Bardelli with a new form Employment Agreement (implemented on or about January 30, 2004), which she signed on February 16, 2004.  This second Employment Agreement shortened the non-solicitation period to 12 months, reduced the covered Market Area to a 50 mile radius of Modis' Meriden office, limited the persons whom Bardelli was prohibited from recruiting to persons previously employed or contracted with by Modis who either worked within the Market Area or with whom Bardelli had personal contact, and limited the clients

---

[1] Defendants also note that they are scheduled to take the depositions of two of Modis witnesses on January 25, 2008, any may learn additional facts of which they are not aware at this time.

whom Bardelli was prohibited from soliciting to those that had been served by Modis in the Market Area within the prior 12 months.  The prohibition on Bardelli's working for a competitor remained essentially unchanged.  (See Pl.'s Am. Compl., Ex. A ¶ 13.)

Bardelli was employed as a Resource Development Manager ("RDM") at Modis, with responsibility for locating and recruiting candidates for placement with Modis' clients.  One of Bardelli's main methods of identifying and contacting potential candidates was through internet job posting sites.  Importantly, Modis' sales personnel (not RDM's such as Bardelli) were responsible for obtaining the assignments from Modis' clients to fill job openings, and for maintaining Modis' relationship with those clients.

Bardelli's starting salary at Modis was $25,000.  In July 2001, Modis increased Bardelli's salary to $30,000.  In December 2003, Bardelli's salary was increased to $35,000.  In December 2005, Bardelli's salary was increased to $38,000.  In addition to her salary, Bardelli was paid commission in varying percentages based upon her placements.

Bardelli, who is married and is the primary breadwinner of her family, had a child in December 2004.  After returning from leave, Bardelli, with the approval of Modis, worked from home part-time in order to accommodate child care arrangements in light of the fact that her husband travels extensively for work.  Bardelli's immediate supervisor at the time, Andrew Case, made many disparaging and discriminatory comments concerning Bardelli's "mommy hours".  Mr. Case further treated Bardelli in a demeaning and unprofessional way.  Bardelli also was subjected to comments of a sexually harassing nature made by another Modis manager, Jim Sweeney.  In spring of

3

2007, Mr. Case advised Ms. Bardelli that her "mommy hours" were causing a disturbance at Modis and she would have to consider returning to work in the office on a full-time basis. Faced with this impending requirement and her continued inappropriate treatment at the hands of Modis personnel, Bardelli determined to leave Modis for a more flexible and professional environment. She found such a position at Edge, with whom she began work on October 8, 2007. Bardelli's last day at Modis was October 4, 2007.

At Edge, Bardelli again works as a recruiter, locating and recruiting candidates for placement with Edge's clients. Bardelli's responsibilities at Edge do not involve client contact. Rather, Edge's sales staff maintains the client relationships and obtains approval to fill job openings. Bardelli's responsibilities are limited to locating and recruiting the candidates to fill such openings and she has essentially no client contact in fulfilling her duties. Since leaving Modis, Bardelli has not recruited any candidates that she placed for Modis during the last 12 months of her employment with Modis.

In this lawsuit, Modis alleges that, approximately three weeks prior to the termination of her employment at Modis, Bardelli ran searches in Modis' database, COSMOS, and that she emailed that information to her personal email address in an effort to unlawfully compete with Modis. Modis further alleges that, in the same time frame, Bardelli sent her personal email address to certain placement candidates. Bardelli denies that her conduct in this regard was in any way wrongful. Rather, Bardelli ran the subject searches as part of her continuing, daily efforts to identify and place candidates while employed at Modis. Due to Modis' computer system's slow response time when logging in off-site as Bardelli often did when working from home, and due to

Modis' server limitations with respect to email capacity, Bardelli commonly used her personal email address to conduct business on Modis' behalf during her employ therefor.

Modis also alleges that Bardelli currently is utilizing Modis' confidential and trade secret information in her employment at Edge.  Bardelli denies these allegations as well. She is not in possession of any client or customer information of Modis that is subject to trade secret protection under the law.  In fact, given the nature of her responsibilities at Modis, she generally was not privy to such information.  Further, her current recruiting efforts are based primarily upon searches of public internet job posting websites, and not on any allegedly confidential information that she may have learned at Modis.

In short, the instant action is an attempt by Modis to foreclose Bardelli from competing fairly in the marketplace and to forestall her ability to earn a living in her chosen profession.  There is no legal or factual merit to Modis' claims, and the requested preliminary injunction should not issue.

## II.    ARGUMENT

Plaintiffs seeks the issuance of a broad preliminary injunction: (i) enjoining Bardelli from, inter alia, working for Edge in any capacity or for any other competing business within the restricted territory (which covers essentially all of Connecticut and reaches into New York and Massachusetts), and from using, disclosing or destroying any of Modis' confidential or proprietary information; (ii) affirmatively requiring that Bardelli return any confidential or proprietary information of Modis that she allegedly has taken, and that she permit Modis' inspection of her personal property; and (iii) restraining Edge from using, disclosing or destroying any of Modis' confidential or

proprietary information, from assisting or enabling Bardelli to violate the restrictive covenants set forth in her Employment Agreement with Modis, and from unlawfully interfering with Modis' contractual relations with Bardelli and Modis' clients, candidates or consultants.  (Pl.'s Mot. Prel. Inj., at 2-3.)  As demonstrated below and via the evidence to be offered at the preliminary injunction hearing, Modis improperly is attempting to utilize the overbroad and unenforceable restrictive covenants set forth in Bardelli's Employment Agreement to forestall Bardelli's employment in any meaningful capacity and to insulate Modis from fair and reasonable competition by Edge.  Under such circumstances, the requested preliminary injunction should not issue.

A.  STANDARD FOR PRELIMINARY INJUNCTION

Issuance of preliminary injunctive relief, such as a preliminary injunction, is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by clear showing, carries the burden of persuasion."  Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005).  In order to obtain such extraordinary relief, the plaintiff must demonstrate: (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor.  Brennan's Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 129 (2d Cir. 2004).

"In ruling on an application for a preliminary injunction . . . the courts have taken into account the following four most important factors: (1) the significance of the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the state of the balance between the aforementioned harm and the harm that granting the injunction would inflict on the opposing party; (3) the probability that the plaintiff will succeed on

the merits; and (4)  the public interest." <u>Phillip v. NCAA</u>, 960 F. Supp. 552, 554 (D.

Conn.) (Smith, M.J.) (citing 11 C. Wright & A. Miller, Federal Practice and Procedure §

2948 (1969 & Supp. 1986)), remanded on other grounds, 118 F.3d 131 (2d Cir. 1997).

It is important to keep the "extraordinary" nature of this relief in mind particularly

where, as here, Modis seeks the issuance of a preliminary injunction that would, <u>inter</u>

<u>alia</u>, prohibit Bardelli from working in any capacity for Edge, and would further totally

foreclose Bardelli from working within the information technology consulting service

industry within a radius that essentially encompasses the entire state of Connecticut

and even reaches into Massachusetts and New York.  In the instant matter, Plaintiff

cannot make the requisite showing to justify the requested relief.

B.  <u>GOVERNING LAW</u>

The Employment Agreement executed by Bardelli on February 16, 2004 states:

"This Agreement shall be construed and enforced in accordance with the laws of the

State of Florida, except as federal law may apply, without giving effect to principles of

conflict of law thereof." (Pl.'s Am. Compl., Ex. A ¶ 24.)  In light of the facts and

circumstances of the instant matter, this Court should apply Connecticut, rather than

Florida law, in determining the enforceability of the subject restrictive covenants.

When an agreement contains a choice of law clause, the district court is required

to apply the law of the forum state to determine whether the clause should be honored.

<u>United Rentals (N. Am.), Inc. v. Myers</u>, Civ. No. 3:03cv589 (PCD), 2003 U.S. Dist.

LEXIS 25287, at * 5 (D. Conn. Apr. 11, 2003) (citing to <u>Fieger v. Pitney Bowes Credit</u>

<u>Corp.</u>, 251 F.3d 386, 393 (2d Cir. 2001)).  Choice of law clauses are reviewed in

Connecticut under the Restatement (Second), Conflicts of Laws § 187.  Elgar v. Elgar, 238 Conn. 839, 850 (1996).  In this regard, the Restatement provides:

> [P]arties to a contract generally are allowed to select the law that will govern their contract, unless either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

Id. (quoting Restatement (Second), Conflicts of Laws § 187).  Section 188 of the Restatement (Second) provides that the following factors should be taken into account in determining the state of the applicable law: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second), Conflicts of Laws § 188.  Section 188 further provides: "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied . . . ."  Id.

Here, Florida has no substantial relationship to either the parties or the transaction.  Further, application of Florida law would be contrary to the fundamental policy of Connecticut, which has a greater material interest in the determination of this matter, in construing restrictive covenants narrowly to ensure that employees are not unduly restrained from earning a living.  Transam, Inc. v. Zhawred, No. 43332, 1990 Conn. Super. LEXIS 330, at * 6 (Conn. Super. Ct. May 29, 1990) ("Covenants not to compete are categorized as restraints of trade and therefore against public policy.") (citing May v. Young, 125 Conn. 1 (1938)); see also Robert S. Weiss & Assocs., Inc. v.

Wiederlight, 208 Conn. 525, 531 (1988) (requiring that geographic restrictions be "narrowly tailored to the plaintiff's business situation"); Scott v. General Iron & Welding Co., 171 Conn. 132, 137 (1976) (providing that a covenant that restricts the activities of an employee following the termination of his employment is valid and enforceable only if the restraint is reasonable).  Cf. Unisource Worldwide, Inc. v. South Cent. Ala. Supply, LLC, 199 F. Supp. 2d 1194, 1201-1202 (M.D. Ala. 2001) (determining to apply Alabama law, rather than the law of Florida as provided in non-competition agreement, observing that Florida law favors the validity of covenants not to compete, as opposed to disfavoring them as does Alabama (and Connecticut), and Florida has eliminated consideration of the balance of hardships as required under Alabama (and Connecticut) law); Fla. Stat. ch. 542.335(1)(g) (precluding consideration of the individual economic hardship that the ex-employee would suffer if the covenant is enforced); Fla. Stat. ch. 542.335(1)(h) ("A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.").

Bardelli resides in Connecticut, she executed the Employment Agreement in Connecticut, she performed her duties under the Employment Agreement within in the State of Connecticut, and her current employment activities on behalf of Edge also take place in Connecticut.  (See Pl.'s Am. Compl. ¶¶ 7, 8, 11, 13, 28, 29, 36.)  Modis' office is located in Meriden Connecticut, and its clients, candidates and good will that it seeks to protect through enforcement of the restrictive covenants all are located in Connecticut. (See id. ¶ 6, 11, 13, 36.)  In light of these facts, Florida lacks a "substantial relationship" to either the parties or the transaction, and Connecticut law is the appropriately

applicable state law.  See, e.g., Merrick v. Cummin, 100 Conn. App. 664, 667 (Conn.

App. Ct. 2007) (in partnership dispute, applying Connecticut law rather than the law of

state of partnership formation and state chosen in partnership agreement (Delaware),

where defendants were Connecticut residents and conducted business related to the

partnership in Connecticut and because there was the possibility that Connecticut had a

materially greater interest in the case); Pajor v. Town of Wallingford, 47 Conn. App. 365,

383 (Conn. App. Ct. 1997) (in action on insurance contract, where the place of the

contract's operative effect was Connecticut and the plaintiff resided in Connecticut,

received all medical treatment in Connecticut and had no contact with anyone in

contract state (Rhode Island), applying Connecticut law rather than law of contract

state), cert. denied., 244 Conn. 917 (1998); Rand Real Estate, LLC v. Plagos, Case No.

SNSP033186, 2007 Conn. Super. LEXIS 3282, at * 5 (Conn. Super. Ct. Aug. 2, 2007)

(in action on lease, determining that chosen state had no relationship to the parties or

the transaction where all of the relevant parties were located in Connecticut, and the

premises in dispute was located in Connecticut).

   That Modis is incorporated and headquartered in Florida is insufficient to

establish a reasonable basis, without more, for the application of Florida law.  See, e.g.,

United Rentals (N. Am.), Inc., 2003 U.S. Dist. LEXIS 25287, at *7 (in restrictive

covenant case, refusing to enforce choice of law clause where the only contact

employee had with chosen state was by virtue of her employer's state of incorporation).

Cf. Elgar v. Elgar, 238 Conn. 839, 851-52 (Conn. 1996) (enforcing choice of law

provision in antenuptial agreement where parties had numerous contacts with chosen

state, including maintaining a residence, operating a business and executing the subject

agreement in the chosen state).

Accordingly, this Court should apply Connecticut law in evaluating the

reasonableness and enforceability of the subject restrictive covenants.

C. <u>PLAINTIFF CANNOT ESTABLISH EITHER A LIKELIHOOD OF
SUCCESS ON THE MERITS OR THAT THE BALANCE OF HARDSHIPS
TIPS IN PLAINTIFF'S FAVOR</u>

Plaintiff's Motion for Preliminary Injunction should be denied because Plaintiff

cannot establish Bardelli's material violation of any enforceable restrictive covenants set

forth in the Employment Agreement or Bardelli's violation of any other laws as claimed

in the operative Complaint, and because the balance of hardships in this case tips

decidedly in favor of Bardelli.

1. <u>The Restrictive Covenants Are Overbroad And Unenforceable
Under Both Connecticut And Florida Law.</u>

Under either state's law, the restrictive covenants set forth in the Employment

Agreement are overbroad in scope and unenforceable.

a. <u>Connecticut Law</u>

i. Connecticut will not enforce unreasonable restrictive
covenants.

A covenant that restricts the activities of an employee following the termination of

his employment is valid and enforceable <u>only</u> if the restraint is reasonable. <u>Scott v.

General Iron & Welding Co.</u>, 171 Conn. 132, 137 (1976); <u>New Haven Tobacco Co. v.

Perrelli</u>, 18 Conn. App. 531, 533, <u>cert</u>. <u>denied</u>., 212 Conn. 809 (1989).  "The five factors

to be considered in evaluating the reasonableness of a restrictive covenant ancillary to

an employment agreement are: (1) the length of time the restriction operates; (2) the

geographic area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." Robert S. Weiss & Associates, Inc. v. Wiederlight, 208 Conn. 525, 529 n. 2 (1988) (internal citations omitted). "The five prong test . . . is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." New Haven Tobacco Co., 18 Conn. App. at 534.  Thus, "while the non-compete must be viewed in its entirety, a single unreasonable provision may be sufficient to invalidate the entire agreement."  Braman Chem. Enters., Inc. v. Barnes, CV064020633S, 2006 Conn. Super. LEXIS 3753, at * 10 (Conn. Super. Ct. Dec. 12, 2006).  The Supreme Court in Scott made clear: "The interests of the employee himself must also be protected, and a restrictive covenant is unenforceable if by its terms the employee is precluded from supporting himself and his family." Scott, 171 Conn. at 137. As discussed further below, the terms of the restrictive covenants at issue in the instant matter do precisely that: preclude Bardelli from supporting herself and her family by prohibiting her employment within the industry in a radius that encompasses the state of Connecticut and reaches into Massachusetts and New York.

    ii. The Employment Agreement executed by Bardelli on February 16, 2004 lacked additional consideration, and is therefore unenforceable.

As a threshold matter, the Employment Agreement that Plaintiff seeks to enforce in this action is unenforceable because it was executed well after the outset of Bardelli's employment at Modis, and no additional consideration was given in exchange for her execution thereof.  "'The doctrine of consideration is fundamental in the law of contracts,

the general rule being that in the absence of consideration an executory promise is unenforceable.'" Thermoglaze, Inc. v. Morningside Gardens Co., 23 Conn. App. 741, 745 (Conn. App. Ct. 1991) (quoting State Nat'l Bank v. Dick, 164 Conn. 523, 529 (Conn. 1973)). Similarly, a modification of an existing agreement must be supported by valid consideration and must require a party to do, or promise to do, something different from that which he is already required to do. Id.

As described above, Bardelli executed an Employment Agreement at the outset of her employment on June 19, 2000. That Employment Agreement purported to restrict Bardelli, for a period of 18 months following the termination of her employment, from, inter alia: (a) recruiting any person employed or contracted with Modis (at any of its offices) at any time during the previous 12 months; (b) soliciting or accepting business from any clients of Modis' Meriden branch office which were clients during the previous 12 months or during the 18 month non-solicitation period; and (c) being employed in a similar capacity by any competitive business within a 100 mile radius of Modis' Meriden branch office. In apparent recognition of the overbroad and unenforceable nature of such restrictions, Modis presented Bardelli with a new form Employment Agreement (implemented on or about January 30, 2004), which she signed on February 16, 2004. This second Employment Agreement shortened the non-solicitation period to 12 months, reduced the covered Market Area to a 50 mile radius of Modis' Meriden office, limited the persons whom Bardelli was prohibited from recruiting to persons previously employed or contracted with by Modis who either worked within the Market Area or with whom Bardelli had personal contact, and limited the clients whom Bardelli was prohibited from soliciting to those that had been served by Modis in

the Market Area within the prior 12 months.  The prohibition on Bardelli's working for a competitor remained essentially unchanged.

Importantly, Bardelli received no additional consideration at the time that she executed the second Employment Agreement on February 16, 2004, over 3 and ½ years after she began her employment at Modis.  Modis alleges in its operative complaint that, "in consideration for signing the agreement, the duration of the agreement and the scope of the market area were reduced."  (Pl.'s Am. Compl. ¶ 29.)[2] This does not constitute sufficient consideration, however, because the initial Employment Agreement itself was overbroad and unenforceable.[3]  Modis cannot rectify the shortcomings in its original Employment Agreement by merely substituting a new, less restrictive (but still overbroad), agreement over 3 years later.  Rather, Modis was obligated to give Bardelli additional valid consideration at the time of entering into the second Employment Agreement because she was not otherwise obligated to comply with the overbroad restrictions set forth in the initial Employment Agreement.[4]  Lacking

---

[2] Modis suggests in its memorandum in support of its Motion for Preliminary Injunction that Bardelli also was given a new compensation plan and was allowed continued access to confidential information and clients and use of Modis' resources.  (Pl.'s Mem. Supp. Mot. Prel. Inj., at 5.)  Bardelli denies that she was given an improved compensation plan at the time of signing the second Employment Agreement, and Modis' reliance on Bardelli's continued access to confidential information, clients and resources is simply a veiled reference to continued employment, which, as noted in the footnote below, is insufficient consideration.

[3] The same principles analyzed later in this memorandum concerning the overbroad territorial, client, customer and competitor restrictions in the second Employment Agreement apply with greater force to the even more restrictive covenants in the initial Employment Agreement.  Accordingly, Defendants do not analyze separately here the over breadth of the provisions in the initial Employment Agreement, but rather incorporate by reference the arguments discussed further below as applied to the second Employment Agreement.

[4] Bardelli's continued employment following execution of the second Employment Agreement does not constitute sufficient consideration for the enforcement of the

any such additional consideration, the second Employment Agreement is unenforceable.  See, e.g., Thermoglaze, Inc., 23 Conn. App. at 745-746 (affirming trial referee's findings that modification to contract placing additional obligations upon a party was unenforceable for lack of consideration for such modification).

        iii.  The geographic scope of the restrictive covenants is unreasonably broad.

    In addition to being unenforceable for lack of consideration, the restrictive covenants set forth in the second Employment Agreement are unenforceable due to the overbroad geographic scope of such restrictions.  Connecticut law requires that the application of a restrictive covenant be confined to a geographical area which is reasonable in view of the particular situation.  Trans-Clean Corp. v. Terrell, CV

---

Agreement.  See North American Outdoor Prods., Inc. v. Dawson, CV040490177S, 2004 Conn. Super. LEXIS 2677, at *9-13  (Conn. Super. Ct. Sept. 21, 2004) (determining that employment agreement containing restrictive covenants executed 4 years after commencing employment was unenforceable for lack of consideration, stating the oft repeated principle: "[i]t is well settled law in Connecticut that continued employment is not consideration for a covenant not to compete entered into after the beginning of the employment") (citing Dick v. Dick, 167 Conn. 210 (1974)); J.M. Layton & Co. v. Millar, CV04008446S, 2004 Conn. Super. LEXIS 2226, at * 12-13 (Conn. Super. Ct. Aug. 9, 2004) (finding unenforceable non-competition clause in employment contract signed after the outset of employment, observing: "It is well settled law in Connecticut however that continued employment is not consideration for a covenant not to compete entered into after the beginning of the employment.") (internal quotations and alterations omitted); Fairfaxx Corp. v. Nickelson, CV 990363873S, 2000 Conn. Super. LEXIS 2340, at * 18-23 (Conn. Super. Ct. Sept. 14, 2000) (determining that restrictive covenants in employment agreement executed by former recruiter at staffing services company after the outset of employment, and for no additional consideration beyond continued employment, were unenforceable for lack of consideration); Command Sys., Inc. v. Wilson, No. CV 91-0702529S, 1995 Conn. Super. LEXIS 406, at * 6 (Conn. Super. Ct. Feb. 9, 1995) (stating that continued employment is not considered to be consideration for the execution of an employment contract once that employment has begun); Transam, Inc. v. Zhawred, No. 43332, 1990 Conn. Super. LEXIS 330, at * 8 (Conn. Super. Ct. May 29, 1990) (finding non-competition covenant in employment contract executed after beginning of employment unenforceable for lack of consideration).

970348039S, 1998 Conn. Super. LEXIS 717, at * 16 (Conn. Super. Ct. Mar. 17, 1998) (citing Scott, 171 Conn. at 138).  Geographic restrictions, in order to be valid, must be reasonably limited and fairly protect the interests of both parties.  Robert S. Weiss & Assocs., Inc., 208 Conn. at 530.  As a result, "[a] restrictive covenant which protects the employer in areas in which he does not do business or is unlikely to do business is unreasonable with respect to the area."  Trans-Clean Corp., 1998 Conn. Super. LEXIS 717, at * 16 (citing Scott, 171 Conn. at 138).

    In the instant matter, Plaintiff seeks to enforce restrictive covenants covering a "Market Area" defined as "the area within a 50 mile radius of the Modis office(s) to which Employee is assigned or, if applicable and capable of measurement, the precise territory or area to which Employee is assigned to work in a management, recruiting or sales capacity, and in which area Employee will have employment and client responsibilities involving marketing, client or consultant contact and/or exposure to marketing, client or consultant information."  (Pl.'s Am. Compl., Ex. A ¶ 3.)[5]  Such a radius from Meriden, Connecticut encompasses essentially the entire state of Connecticut, and even reaches into New York and Massachusetts.  See www.zip-codes.com/zip-code-radius-finder.asp (identifying all zip codes within 50 miles from Meriden's zip code 06450, which include almost all of the towns in Connecticut, and also various zip codes for cities in Massachusetts and New York).[6]

---

[5] Plaintiff calculates the 50 mile radius from Modis' Meriden office.  (See Pl.'s Am. Compl. ¶ 35; Pl.'s Mem. Supp. Mot. Prel. Inj., at 14.)
[6] Judicial notice may be taken of the geography of a state and the distance between points.  Baker Properties v. Town of Hamden, No. CV 89-0284384S, 1994 Conn. Super. LEXIS 1719, at * 43 (Conn. Super. Ct. June 9, 1994).

Prohibiting Bardelli from working in her chosen field within this large of a geographic area, particularly given that Modis itself acknowledges that its Meriden office serves the Meriden and Hartford market (Pl.'s Compl. ¶ 11) and Bardelli's recruitment responsibilities were limited to clients of Modis in the Meriden, Connecticut area (id. ¶ 13), is unreasonable, and should not be enforced.  See, e.g., Braman Chem. Enters., Inc. v. Barnes, CV064020633S, 2006 Conn. Super. LEXIS 3753, at * 14-24 (Conn. Super. Ct. Dec. 12, 2006) (finding unenforceable a restrictive covenant with 50 mile geographic restriction, noting that such a restriction is in fact a circle with a diameter of 100 miles, covering a total area of a "whopping 7850 square miles", where Connecticut is only 5018 square miles, and where the non-compete does not quite cover all of the state, but it does include portions of Massachusetts, New York and Rhode Island, and observing that the employer improperly was attempting not just to protect its interest in its existing customers who were actually serviced by the employee or might have become acquainted with her professionally during her employment, but rather on excluding all competition by the employee); Trans-Clean Corp., 1998 Conn. Super. LEXIS 717, at * 7-8, 16-18 (finding covenant restricting competition within a 60 mile radius of Stratford, Connecticut unreasonable, where such radius encompasses approximately 75% of the area of the state of Connecticut, including the 6 major metropolitan areas, and also reaches to include parts of New York and New Jersey, and plaintiff did not actively conduct its business within the entire covered radius); Gopen v. The Ten Eighty Corp., No. CV 92 070 35 56 S, 1993 Conn. Super. LEXIS 11, at * 5-6 (Conn. Super. Ct. Jan. 4, 1993) (concluding that 50 mile radius was not reasonably necessary for the fair protection of the employer's rights and did unreasonably curtail

the rights of the employee and, therefore, was unenforceable); New England Ins. Agency, Inc. v. Miller, No. CV-89-0285030-S, 1991 Conn. Super. LEXIS 817, at * 37-39 (Conn. Super. Ct. Apr. 16, 1991) (determining that 25 mile restrictive covenant was unreasonable); Timenterial, Inc. v. Dagata, 29 Conn. Supp. 180, 183-184 (Conn. Super. Ct. 1971) (determining that 50 mile radius, covering Connecticut and portions of Massachusetts, New York and Rhode Island, of restrictive covenant was too broad and extensive reasonably to secure the protection of plaintiff's business and was therefore, unenforceable); Nesko Corp. v. Fontaine, 19 Conn. Supp. 160, 162-166 (Conn. Sup. Ct. 1954) (holding that restrictive covenant covering 35 mile radius of Waterbury, Connecticut, which includes a great part of five of the most densely populated counties of Connecticut and parts of southern Massachusetts and New York, is unreasonable to the employee, unnecessary to the employer and prejudicial to the public, and therefore not enforceable).

Furthermore, because the geographical area contemplated by the Employment Agreement is indivisible and therefore, cannot be rewritten by the Court under the "blue-pencil rule", the entire geographic restriction must be eliminated, rendering the non-compete agreement in its entirety unenforceable.  See, e.g., Timenterial, Inc., 29 Conn. Supp. at 184-185 (refusing to modify overbroad geographic restriction in deference to the "blue-pencil rule" adopted in Connecticut, where the subject restriction did not specify distinct geographical areas that could be stricken out) (citing Attwood v. Lamont, 2 K.B. 146, 155 (1920) ("[T]he Courts will sever in a proper case where severance can be performed by a blue pencil but not otherwise.")); Trans-Clean Corp., 1998 Conn. Super. LEXIS 717, at * 19 (deeming non-compete agreement unenforceable in its

entirety because overbroad geographic restriction could not be rewritten by the court under the "blue-pencil rule"); see also Beit v. Beit, 135 Conn. 195, 205 (1948) ("A restrictive covenant which contains or may be read as containing distinct undertakings bounded by different limits of space or time, or different in subject-matter, may be good as to part and bad as to part. But this does not mean that a single covenant may be artificially split up in order to pick out some part of it that can be upheld. Severance is permissible only in the case of a covenant which is in effect a combination of several distinct covenants.") (internal citations omitted).

> iv.  The restrictive covenant unreasonably extends to all of Modis' clients.

The Employment Agreement purports to prohibit Bardelli from soliciting all clients of Modis' Meriden office, whether or not Bardelli had any contact with said clients through her employment at Modis, which were clients of Modis during the 12 months preceding the termination of Bardelli's employment at Modis.  (See Pl.'s Am. Compl., Ex. A ¶ 13(b).)  Such a restriction, not limited to any clients that Bardelli may have had contact with at Modis, is overbroad and unenforceable, particularly where, as here, Bardelli's responsibilities at Modis primarily involved contact with recruitment candidates, not Modis' customers.[7]  See e.g., New England Ins. Agency, Inc., 1991

---

[7] Because Bardelli's responsibilities at Edge do not include client solicitation, this restriction is largely theoretical for the purposes of the instant dispute (except insofar as Plaintiff erroneously claims that Bardelli is violating this provision of the Agreement). Bardelli also objects to the overbroad restriction on her ability to recruit candidates that were placed by Modis (not just through Bardelli) in the 12 months prior to the termination of her employment.  (See Pl.'s Am. Compl., Ex. A ¶ 13(a).)  As Plaintiff does not rely upon such restriction for its requested relief, however, Bardelli will not specifically address it further in this memorandum.  (See Pl.'s Am. Compl. ¶ 30 (failing to reference subsection (a) of Paragraph 13 of the Employment Agreement; Pl.'s Mem. Supp. Mot. Prel. Inj., at 5-6 (same).)

Conn. Super. LEXIS, at * 45-47 (declaring restriction against solicitation of all clients and customers of employer unenforceable as an unreasonable restriction against the employee's ability to pursue his occupation). Cf. New Haven Tobacco Co., Inc. v. Perrelli, 18 Conn. App. 531, 537 (Conn. App. Ct. 1989) (upholding restrictive covenant prohibiting employee from transacting business only with the customers of the plaintiff with whom employee had dealt or whose identity he had discovered while he was employed by the plaintiff); Braman Chem. Enters., Inc., 2006 Conn. Super. LEXIS 3753, at *18 (finding restriction not limited to customers overbroad, noting that a "fair protection" of employer's interests might have been a short restriction on the employee's soliciting any of the customers she serviced).

> v.  The prohibition against all competing employment is overbroad and unenforceable.

The most limiting, and hence, most unreasonable, restriction in the Employment Agreement is its prohibition against Bardelli's employment within the industry.  The Agreement purports to prohibit Bardelli from, inter alia, being employed in a similar capacity by any business competitive with Modis within a 50 mile radius of Modis' Meriden branch office for a period of 12 months following the termination of Bardelli's employment with Modis.  (Pl.'s Am. Comp., Ex. A, ¶ 13(c).)  The Agreement broadly defines Modis' business as "providing information technology ("IT") consulting services and solutions, and recruiting and staffing of IT workers on a contract, temporary, temporary to hire and direct hire basis throughout the continental United States."  (Id. ¶ 1.)

The effect of these provisions of the Agreement would prohibit Bardelli from gaining meaningful employment within the industry within which she has worked for a

number of years anywhere within a "whopping 7850 square miles" of her home.

Braman Chem. Enters., Inc., 2006 Conn. Super. LEXIS 3753, at * 16.  There is nothing

about Bardelli's skills or experience with Modis that could justify such a restriction.

Such anti-competitive restrictions routinely are deemed unenforceable as unreasonable

restraints on the employee's ability to earn a living.  See, e.g., Fairfaxx Corp. v.

Nickelson, CV 990363873S, 2000 Conn. Super. LEXIS 2340, at * 2, 28-29 (Conn.

Super. Ct. Sept. 14, 2000) (finding restrictive covenant prohibiting former recruiter for

temporary employment staffing company from working for any company in the

temporary employment business to be unreasonable in that it unnecessarily precluded

employee from supporting herself and it was not reasonably necessary for the fair

protection of employer's business, expressly noting, "[i]n general terms, the generation

of clients and candidates is hardly rocket scientry or work requiring any high level of

technology skills"); Gopen, 1993 Conn. Super. LEXIS 11, at * 5 (finding restrictive

covenant prohibiting competing employment within a 50 mile radius not reasonably

necessary for the fair protection of the employer's rights and unreasonably curtaining

the rights of the employee); New England Ins. Agency, Inc., 1991 Conn. Super. LEXIS

817, at * 44-45 (finding "unreasonable under any prong of the [five factor] test in Scott"

portions of restrictive covenant that precluded employee from conducting any competing

business within the restricted area (25 miles), as the court could not "envisage any

reasonable opportunity for [the employee] to engage in the insurance business from any

source within that area"); Timenterial, Inc., 29 Conn. Supp. at 183-184 (finding

unenforceable restrictive covenant preventing employee from engaging in competing

business within 50 mile radius, stating: "There is nothing in the evidence to indicate that

the services of the defendant were so special, peculiar, and individualistic that he cannot be replaced by another salesman equally competent.  On the other hand, the defendant should not be deprived of the opportunity to perform work for which he is suited and to support himself and his family in reasonable comfort.").  Cf. New Haven Tobacco Co., Inc., 18 Conn. App. at 534 (upholding narrow restrictive covenant, expressly contrasting it with an unreasonable "anticompetitive covenant that restricts an employee from engaging in the same business as the employer in a given geographical area and prohibits the employee from doing business with all consumers of the service located in that area"); Braman Chem. Enters., Inc., 2006 Conn. Super. LEXIS 3753, at * 18, 22 (declaring overbroad restrictive covenant unenforceable, noting "[t]here is nothing about [the employee's] prior employment that has given [the employee] any particular advantage over [the employer] in soliciting the more than two million potential customers spread out over those 7850 square miles", and observing the minimal investment made in the employee who was paid hourly wages and some training and licensing fees were the company's only real investment).

As in the foregoing cases, the balance of the factors to be considered in evaluating the reasonableness of a restrictive covenant weigh strongly against enforcement of this provision of the Employment Agreement.

### b.  Florida Law

i.  A restrictive covenant is not enforceable unless supported by a "legitimate business interest" and the covenant is reasonably necessary to protect such interest.

The Florida Appellate Court recently summarized Florida's law with respect to the enforceability of restrictive covenants:

> In Florida, the enforceability of restrictive covenants is controlled in large part by section 542.335, Florida Statutes (2004).  Under this statute, a restrictive covenant is not enforceable unless supported by a "legitimate business interest." If the party seeking to enforce the restrictive covenant pleads and proves a "legitimate business interest," it must also then demonstrate that the "contractually specified restraint is reasonably necessary to protect" its identified business interest.

Florida Hematology & Oncology v. Tummala, 927 S. 2d 135, 137 (Fla. Dist. Ct. App. 2006), appeal dismissed, 969 So. 2d 316 (2007).

> ii.   The customer and anti-competition restrictions in the Employment Agreement do not meet this standard.

While Florida law supports an employer's right to protect its legitimate business interests, such rights are not without limitations.  Courts acknowledge that they "cannot uphold an agreement whose sole purpose is to prevent competition per se; such agreements are void as a matter of public policy." Colucci v. Kar Kare Auto. Group, Inc., 918 S. 2d 431, 440 (Fla. Dist. Ct. App. 2006); see Pirtek U.S.A., LLC v. Richard Wilcox & Wilcox, LLC, Case No. 6:06-cv-566-Orl-31KRS, 2006 U.S. Dist. LEXIS 41569, at * 7 (M.D. Fla. June 21, 2006) ("A mere desire to avoid competition is not a legitimate business interest.") (citing Advantage Digital Sys. v. Digital Imaging Servs., 870 So. 2d 111, 116 (Fla. Dist. Ct. App. 2003)); Deloitte & Touche U.S.A. LLP v. Lamela, Civil Action No. 1542-N, 2005 Del. Ch. LEXIS 164, at * 19 (Del. Ch. Oct. 21, 2005) ("Thus, under § 542.335, courts do not simply enforce restrictive covenants as written.  Rather, the proponent must demonstrate that the contractually specified restraint is reasonably necessary to protect a legitimate business interest before a court will enforce it.") (applying Florida law).

Because the subject restrictive covenants are not limited only to specific client relationships that Bardelli may have developed, but instead extend the restrictions to all clients of Modis' Meriden office and further seek to prohibit Bardelli from competing in any way with Modis, the restrictions necessarily fail for lack of a substantial relationship with the clients whom Modis seeks to protect from competition.  See, e.g., Florida Hematology & Oncology, 927 So. 2d at 137-138 (affirming denial of injunction seeking to enforce covenant not to compete within 15 mile radius, where employee already took measures to assure he did not accept any of former employer's patients, due to failure of employer to demonstrate a legitimate business interest in protecting patients other than those "'specific prospective or existing' patients with whom employer had a 'substantial interest'"); Deloitte & Touche U.S.A. LLP v. Lamela, Civil Action No. 1542-N, 2005 Del. Ch. LEXIS 164, at * 41-42 (Del. Ch. Oct. 21, 2005) (applying Florida law, declining to grant injunction enjoining former partner from soliciting customers whom partner did not service while employed by plaintiff, because plaintiff was unable to demonstrate that it had a legitimate business interest subject to protection with respect to such clients); University of Fla. v. Sanal, 837 So. 2d 512, 514-516 (Fla. Dist. Ct. App. 2003) (affirming denial of injunctive relief seeking to enforce non-competition agreement, where trial court determined that employer failed to establish a legitimate business interest in its prospective client base, and was instead seeking to eliminate generic competition in the marketplace, and further holding that, to qualify as a "legitimate business interest" under Florida law, the employer's relationship with a prospective patient must be, in addition to "substantial", one with a particular, identifiable, individual) (emphasis added); Anich Indus., Inc. v. Raney, 751 So. 2d 767,

771 (Fla. Dist. Ct. App. 2000) (affirming denial of injunction seeking to enforce restrictive covenant prohibiting employee from competing against former employer because the employer could not demonstrate a "substantial" relationship with its non-exclusive customers).  See also Fla. Stat. ch. 542.335(1)(b)(3) (defining "legitimate business interest" to include substantial relationships with *specific* prospective or existing clients). Accordingly, such restrictions are overbroad and not reasonably necessary to protect Modis' legitimate business interest.[8]  Therefore, the restrictive covenants prohibiting Bardelli's solicitation of all clients, regardless of whether she had any contact with such clients while employed by Modis, and prohibiting Bardelli's employment by a competitor are unenforceable.[9]

### 2. Plaintiff Cannot Establish Bardelli's Material Violation Of The Employment Agreement.

With the exception of the overbroad and unenforceable non-competition covenant, Plaintiff cannot establish a likelihood of success on the merits of its claim that Bardelli is otherwise violating the Employment Agreement.  As will be further

---

[8] To the extent that Modis relies upon its business interest in protecting confidential and trade secret information as justification for the subject restrictions, as discussed further below and will be demonstrated at the preliminary injunction hearing, Bardelli did not misappropriate and is not currently utilizing any confidential or trade secret information of Modis subject to protection under the law.  Thus, the restrictive covenants are not reasonably necessary to protect Modis' business interest in its confidential and trade secret information.  See, e.g., Passalacqua v. Naviant, Inc., 844 So. 2d 792, 795-796 (Fla. Dist. Ct. App. 2003) (vacating injunction issued against former employees because employer failed to establish that former employees utilized any proprietary or confidential information of employer and thus, the employer failed to prove a legitimate business interest justifying enforcement of non-compete covenant).

[9] Florida law (in contrast to Connecticut) permits the court to modify an overbroad restrictive covenant to grant the level of relief necessary to protect the employer's legitimate business interests.  Fla. Stat. ch. 542.335(1)(c) ("If a contractually-specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.").

demonstrated during the preliminary injunction hearing, because Bardelli's responsibilities at Edge do not involve calling upon customers, she is not in a position to violate the restrictive covenant prohibiting solicitation of Modis customers, and she has made an effort not to solicit candidates who were contracted with by Modis within the Market Area during the 12 months prior to her departure.  With respect to Modis' claim that Bardelli misappropriated Modis' confidential information, Bardelli expressly denies that she took or is utilizing any protected information of Modis.  The facts of this case, when adduced at the upcoming hearing, will not support Modis' claims that Bardelli has breached the Employment Agreement in any way as to justify the requested injunctive relief.

        3.  <u>The Balance Of Hardships Tips Decidedly In Bardelli's Favor.</u>

Based upon the facts and circumstances of the instant matter, the factors relevant to issuance of the requested injunction weigh strongly in Bardelli's favor.  As will become more apparent during the preliminary injunction hearing, Bardelli stands to suffer significant harm if the requested injunction issues, while Modis' business will be relatively unaffected by Bardelli's activities.  To wit, Bardelli is the primary breadwinner in her family, and her husband and child depend on Bardelli's continued employment. Bardelli does not regularly deal with clients of Edge (or Modis), and much of her time at Edge is spent attempting to fill positions for which Modis has not been authorized to seek candidates. Bardelli's recruitment efforts are based upon public information available on the internet, and not upon any proprietary or confidential information that she may have had access to while at Modis.  As Bardelli is not violating the non-solicitation provisions of the Employment Agreement and is not utilizing any confidential

or proprietary information of Modis, Modis is not likely to succeed on the merits of its claims and there is little to no threat of irreparable harm to Modis as a result of Bardelli's current activities.  In light of the foregoing and other facts as will be demonstrated at the preliminary injunction hearing, the requested injunction should be denied.  See, e.g., Genalco, Inc. v. Turcotte, No. 33 78 38, 1992 Conn. Super. LEXIS 3097, at * 2-3 (Conn. Super. Ct. Oct. 29, 1992) (vacating temporary injunction because the plaintiff did not show that the acts of the defendant caused the plaintiff any irreparable harm, while conversely, the continuance of an injunction would affect the various business dealings of the defendant, necessary to his livelihood, and would seriously and adversely affect such livelihood).

### 4.   Plaintiff's Other Causes Of Action Are Without Merit.

For the reasons set forth in Defendants' Motion to Dismiss pending before the Court, incorporated herein by reference, Modis' other claims that Bardelli violated the Computer Fraud and Abuse Act (Count One), breached the implied covenant of good faith and fair dealing (Count Five), converted Modis' property (Count Six), and, together with Edge, tortiously interfered with Modis' contractual/business relations (Counts Eight and Nine) all are legally insufficient.  Further, such claims, to the extent that they are found to state a claim upon which relief may be granted, are not supported by the evidence as will be offered during the preliminary injunction hearing.[10]  Similarly, Modis'

---

[10] With respect to the only claim against Edge, that it tortiously interfered with Modis' relationship with Bardelli, the facts will not support such a claim.  In addition to other facts as will be adduced at the preliminary injunction hearing, Edge's alleged inducement of Bardelli is not what led to her departure from Modis.  Rather, Bardelli already had determined to leave Modis due to dissatisfaction with her treatment at Modis.  Thus, Edge's subsequent employment of Bardelli did not cause Modis' loss of its employee.

claims that Bardelli breached her duty of loyalty to Modis (Count Three) and violated the

Connecticut Uniform Trade Secrets Act (Count Four) and the Connecticut Unfair Trade

Practices Act (Count Seven) are without merit, as the evidence will demonstrate that

Bardelli did not misappropriate any customer information or other confidential or trade

secret information of Modis.  See, e.g., New England Ins. Agency, Inc., 1991 Conn.

Super. LEXIS at * 17-35 (engaging in a thorough review of Connecticut's trade secret

law and declining to issue injunctive relief on plaintiff's claim that former employee was

utilizing confidential trade secrets in competing business, finding that plaintiff failed to

meet its burden of proving that the customer information at issue was entitled to trade

secret protection); Conn. Gen. Stat. § 35-51(d) (defining "trade secrets" as information

that is not generally known to and not readily ascertainable by other persons and is the

subject of efforts to maintain its secrecy); see also Colucci, 918 So. 2d at 439

("Protectable information includes that which is unique in the industry and confidential.")

(applying Florida law); AutoNation, Inc. v. O'Brien, 347 F. Supp. 2d 1299, 1304 (S.D.

Fla. 2004) ("information that is commonly known in the industry and not unique to the

allegedly injured party is not confidential and not entitled to protection") (Florida law);

Anich Indus., Inc. v. Raney, 751 S. 2d 767, 770-771 (Fla. Dist. Ct. App. 2000)

(employee's knowledge of employer's allegedly confidential information was commonly

known).

    D.  <u>IN THE EVENT THAT THE COURT GRANTS INJUNCTIVE RELIEF, IT
SHOULD REQUIRE THAT MODIS POST AN APPROPRIATE BOND</u>

      Should the Court decide to issue a preliminary injunction, the Court should

condition the injunction upon Plaintiff's posting of a bond.  Rule 65 of the Federal Rules

directs that the court may issue a preliminary injunction or a temporary restraining order

only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully restrained or enjoined. See Fed. R. Civ. P. 65(c).  Cf.  James W. Moore, Moore's Federal Practice § 65.52, at 65-106 (3d ed. 2007) ("A district court issuing a preliminary injunction . . . has the discretion to dispense with the security requirement of Rule 65(c) under limited circumstances).  Under these circumstances, whereby Bardelli's ability to earn a living may be severely compromised, should the Court determine that an injunction is appropriate, the Court should require the posting of an appropriate bond. See, e.g., Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1056 (2d Cir. 1990) (reversing grant of injunction enforcing a non-solicitation restrictive covenant, remanding to district court to determine damages recoverable against the $100,000 bond); H & R Block Eastern Tax Servs., Inc. v. Brooks, Civ. No. 3:00-cv-1332 (JCH), 2000 U.S. Dist. LEXIS 19369, at *19 (D. Conn. Oct. 12, 2000) (ordering that plaintiff post $200,000 bond in connection with granting preliminary injunction enforcing restrictive covenants in employment agreement); see also North Am. Prods. Corp. v. Moore, 196 F. Supp. 2d 1217, 1232 (M.D. Fla. 2002) (ordering that plaintiff post $500,000 bond in connection with injunction enforcing non-solicitation restrictive covenant, calculated based upon anticipated lost revenue to new employer during period of injunction).

III.     **CONCLUSION**

For the reasons set forth above and in light of the facts as will be demonstrated at

the upcoming preliminary injunction hearing, Defendants respectfully submit that

Plaintiff's Motion for Preliminary Injunction should be denied in all respects.


DEFENDANTS TRISHA BARDELLI and
EDGE TECHNOLOGY SERVICES, INC.


By:___*s/ Rowena A. Moffett*_____
Rowena A. Moffett, Esq. (ct19811)
BRENNER, SALTZMAN & WALLMAN LLP
Their Attorney
271 Whitney Avenue
New Haven, Connecticut 06511
Phone: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2008, a copy of the foregoing was filed

electronically and served by mail on anyone unable to accept electronic filing.  Notice of

this filing will be sent by e-mail to all parties by operation of the Court's electronic filing

system or by mail to anyone unable to accept electronic filing.


_s/ Rowena A. Moffett_____

Rowena A. Moffett