**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MODIS, INC., | : | 3:07cv1638 (WWE) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRISHA BARDELLI and | : | |
| EDGE TECHNOLOGY SERVICES, | : | |
| INC., | : | |
|     Defendants. | : | |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

In this action, plaintiff Modis alleges that defendant Trisha Bardelli, its former employee, misappropriated confidential trade secret information that she has used to benefit her new employer, defendant Edge Technology Services ("Edge"). Plaintiff alleges the following counts against Bardelli: violation of the Computer Fraud and Abuse Act ("CFAA") (count one); breach of employment agreement (count two); breach of duty of loyalty (count three); misappropriation of trade secrets (count four); breach of implied covenant of good faith and fair dealing (count five); conversion (count six); violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (count seven); and tortious interference with contractual or business relations (count eight). Plaintiff also claims that Edge is liable for tortious interference with contractual or business relations (count nine). Plaintiff seeks damages and a preliminary injunction. A hearing on the preliminary injunction motion is scheduled to be held on January 30, 2008.

Defendants have filed a motion to dismiss the claims of a CFAA violation, breach of the implied covenant of good faith and fair dealing, conversion, and tortious interference with contractual or business relations.

At present, federal jurisdiction is premised upon the statutory CFAA claim. However, plaintiff has indicated it would amend the complaint to allege diversity jurisdiction if the CFAA claim is dismissed.

In their papers, defendants have represented that plaintiff's claims for damages against Bardelli are subject to an arbitration agreement, although claims for injunctive or equitable relief are exempted from this arbitration agreement. Plaintiff is currently considering defendants' demand that it comply with the arbitration agreement. Defendants represent that they will move to compel arbitration if plaintiff refuses their demand.

The Court has considered the excellent briefs submitted by the parties. For the following reasons, the motion to dismiss will be granted as to the CFAA claim, and denied as to all other claims.

## BACKGROUND

For purposes of ruling on this motion, the Court takes the facts alleged in the complaint to be true.

Modis is a Florida corporation with its principal place of business in Jacksonville, Florida. It is authorized to do business in Florida and operates an office located in Meriden, Connecticut. It serves businesses and governmental clients by providing customized information technology ("IT") personnel and services.

Bardelli is an individual residing in Connecticut, who was employed at Modis as a Resource Development Manager until October 5, 2007. In this position, Bardelli was responsible for locating and recruiting candidates to place at Modis' clients in the Meriden area.

In February 2004, Bardelli executed an employment agreement with Modis. This

agreement contained restrictive covenants applicable to Bardelli during her employment with Modis and for a period of 12 months following termination of her employment with Modis. The agreement prohibited Bardelli: 1) from disclosing Modis' confidential information; 2) from making contact, on behalf of a Modis competitor, with any of Modis' clients served or solicited within a fifty mile radius of Modis' Meriden office during a twelve month period prior to termination of Bardelli's employment with Modis; 3) and from working for a Modis competitor or similar business within a fifty mile radius of Modis' Meriden office in a similar capacity as her position with Modis.

While still employed with Modis, Bardelli began communicating with representatives of Edge concerning potential employment with Edge in a position similar to that she held at Modis. Bardelli also utilized Modis' electronic mail ("e-mail") system to access, without authorization or in excess of her authorization, information contained in Modis' database about its clients for her own purposes.

After she left Modis, Bardelli was hired by Edge and has been performing in a capacity similar to her position at Modis. During her employment at Edge, Bardelli has allegedly divulged, misappropriated and used Modis' confidential trade secrets and other proprietary information obtained during the course of her employment at Modis.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.

Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Igbel v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

Count One: CFAA

Bardelli and Edge argue that plaintiff's count one should be dismissed because plaintiff has failed to allege the requisite elements of a CFAA claim. Plaintiff counters that it has met the pleading standard pursuant to Federal Rules of Civil Procedure 8.

Section 1030(a)(2)(C), CFAA states, in pertinent part:

> Whoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer if the conduct involved an interstate or foreign communication . . . shall be punished as provided in subsection (c) of this Act.

CFAA is a primarily a criminal statute, but it provides for a private cause of action where a plaintiff meets certain requirements. See 18 U.S.C. 1030(g). Defendants argue that plaintiff's allegations fail to establish the requisite elements: 1) that defendant Bardelli's conduct involved an interstate or foreign communication; 2) that Bardelli used a "protected computer" in that it was used for interstate or foreign commerce or communication; 3) that Bardelli used plaintiff's computer to obtain information without authorization or exceeded her authorized access; and 4) that plaintiff suffered losses recoverable under the Act.

4

### Interstate or Foreign Communication

Defendants argue that the complaint fails to satisfy the CFAA requirements that Bardelli's conduct involved an interstate or foreign communication and that the computer was used in interstate or foreign commerce or communication. Defendants assert that the conduct alleged is limited to communication within the state of Connecticut, and plaintiff cannot depend on the conclusory allegation that it "uses its computers in interstate commerce or communication" to establish the jurisdictional requirements of CFAA.

However, the complaint establishes that this case involves a Florida corporation with its principal place of business in Jacksonville, Florida, and at least one office in Meriden, Connecticut. The complaint provides that "Modis' trade secret compilation of client, candidate and consultant specific information is maintained in its secured database called COSMOS. . . ." Accordingly, the factual allegations concerning the office locations set forth a plausible claim that defendant Bardelli engaged in an interstate or foreign communication, and that the computer used was a "protected computer" in that it was used in interstate or foreign commerce or communication.

### Without Authorization or Exceeded Authorization

Defendants argue that plaintiff has failed to establish that Bardelli's use of its computer was without authorization or exceeded her authorized access. Defendants maintain that plaintiff cannot establish this requirement because she was "authorized" as an employee to conduct the database search at issue.

Plaintiff has alleged that "Bardelli intentionally accessed Modis' Database without authorization and/or exceeded her authorized access, and transferred information

outside of Modis to her own possession, thereby misappropriating and obtaining valuable confidential, proprietary and trade secret information belonging to Modis." Pursuant to CFAA , the term "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6).

At present, courts are split as to what circumstances give rise to access without authorization or access that exceeds authorization  Some courts, in considering Section 1030(e)(6), have ruled that an accesser who has obtained and used proprietary information in violation of a duty of loyalty violates CFAA. International Airport Ctrs., L.LC. v. Citrin, 440 F.3d 418, 420-421 (7th Cir. 2006).

Defendants advance the holdings of several district courts that confine: 1) a CFAA violation for accessing without authorization to instances involving an outsider or user who does not have permission to access the computer; and 2) a CFAA violation for access in excess of authorization to instances involving a user whose authorization is limited to certain information. See Diamond Power Intern., Inc. v. Davidson, 2007 WL 2904119, *13-14 (N.D. Ga 2007) (discussing cases).

At this time, the Court need not resolve this conflict of authority since Bardelli, subject to the employment agreement, had agreed "to refrain from taking or reproducing or allowing to be taken or reproduced any Modis Property except in furtherance of Modis' Business." In ruling on this motion to dismiss, the Court must construe the allegations as stating that Bardelli's authorization to plaintiff's database was limited to access "in furtherance of Modis' Business." Accordingly, plaintiff has sufficiently pled the element of access that exceeded authorization.

Damage or Loss

Defendants maintain that plaintiff "fails to allege the type of harm necessary in order to bring a claim against Bardelli under the Act." Defendants submit that recoverable losses under the Act are limited to the costs of analyzing and/or restoring the computer information and revenue lost "because of interruption of service."

CFAA provides that a civil action for compensatory damages or injunctive or equitable relief may be maintained by any "person who suffers damage or loss" due to a violation of CFAA. However, CFAA requires civil litigants such as plaintiff to meet the jurisdictional requirement of a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, costs incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "Damage" is defined as "any impairment to the integrity or availability of data, a system, or information." The Second Circuit has observed that, according to the plain language of the statute, CFAA "treats lost revenue as a different concept from incurred costs," and permits recovery of lost revenue only when connected to "an interruption in service." Nexans Wires S.A. v. Sark-USA, Inc., 166 Fed. App. 559, 562 (2d Cir. 2006). However, "the costs of responding to the offense" are recoverable regardless of whether there is an interruption in service, and federal courts have sustained actions based on allegations of costs to investigate and take remedial steps in response to a defendant's misappropriation of data. P.C. Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, L.L.C.

7

2007 WL 708978 (D.N.J.) (citing cases).

Plaintiff has alleged that Bardelli's conduct caused losses to Modis in excess of $5,000. The Court is mindful that Twombly instructs that, while federal pleading does not require detailed facts, factual allegations should provide the "grounds" of a plaintiff's entitlement to relief above the speculative level. 127 S.Ct. at 1959. Pursuant to CFAA, plaintiff's entitlement to relief depends on its ability to meet the jurisdictional amount of loss. At present, plaintiff's allegation as to loss requires speculation as to the grounds for relief. The allegations fail to provide notice as to whether plaintiff is asserting losses based on response costs or revenue due to an interruption of service. This case presents an instance where plaintiff is obliged to amplify its claim of a jurisdictional loss with some factual allegations to render its claim plausible. See Iqbel, 490 F.3d at 157.

Accordingly, the Court will grant the motion to dismiss the CFAA claim, but will allow plaintiff the opportunity to replead so as to amplify the grounds for its asserted right to relief. If plaintiff cannot meet the jurisdictional requirements of CFAA, it must amend the complaint to meet the requirements of 28 U.S.C. § 1332 to preserve federal jurisdiction. Plaintiff will have the opportunity to amend its complaint by January 25, 2008 or, if plaintiff cannot meet that deadline, the Court will set another date and will reschedule the preliminary injunction hearing to a mutually convenient date.

Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants assert that plaintif's claim of breach of implied covenant of good faith and fair dealing should be dismissed as legally insufficient. Specifically, defendants argue that plaintiff has failed to allege conduct constituting bad faith.

In the context of a breach of the covenant of good faith and fair dealing, bad faith

involves a dishonest purpose. Barber v. Jacobs, 58 Conn.App. 330, 338 (Conn.App.), cert. denied, 254 Conn. 920 (2000). Paragraph 2 of the amended complaint alleges that the "action arises out of a scheme devised and implemented by Defendant Bardelli, while formerly employed with Modis, to convert, conceal and misappropriate Modis' trade secrets and other confidential proprietary information in furtherance of her plan to unfairly compete with Modis and tortiously interfere with contractual relations in violation of . . . her non-solicitation, non-compete and confidentiality obligations in her employment contract with Modis." Paragraph 37 provides that, while Bardelli was still employed with Modis, she began communicating with Edge about working for Edge in a similar position as the one she held with Modis. The complaint goes on to describe how she "utilized Modis' electronic mail ("e-mail") system on her working time at Modis to her advantage and contrary to Modis' best interests and accessed, without authorization, extensive information in Modis' database about its clients for her own purposes."

These allegations are incorporated into plaintiff's claim for breach of the covenant of good faith and sufficiently allege conduct that may be construed as "bad faith." The motion to dismiss will be denied on this ground.

Conversion

Defendants attack plaintiff's conversion claim as improper since the tort of conversion does not apply to intangible property pursuant to Connecticut law. Plaintiff argues that the conversion claim is proper because the intangible property rights at issue are evidenced in the employment agreement and in Bardelli's e-mails.

The Connecticut Supreme Court has defined conversion as "some unauthorized act which deprives another of his property permanently or for an indefinite time" resulting

9

in harm to the owner. Falker v. Samperi, 190 Conn. 412, 419-420 (Conn. 1983). In Connecticut, intangible property interests have not traditionally been subject to the tort of conversion, except for those intangible property rights evidenced in a document." Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 44 (2000).

Defendants rely, inter alia, upon Pepe & Hazard v. Jones, 2002 WL 31460309 (Conn. Super.), which considered whether a jury trial need be provided for claims for statutory computer conversion and the Connecticut Unfair Trade Secrets Act.[1] The Superior Court reasoned that a jury trial on such claims was not required since theft or misappropriation of intangible property such as a trade secret had no root or analogue in common law conversion. However, the Connecticut Supreme Court's recent holding that a misappropriation of trade secrets claim is properly characterized as an action sounding in damages entitled to a jury trial for damages compromises the persuasive value of Pepe & Hazard. Evans v. General Motors Corp., 277 Conn. 496, 518 (2006).

Defendants advance language from Zanker Group, LLC v. Summerville at Litchfield Hills, LLC, 2006 WL 2130382 (Conn. Super.). In Zanker, the Superior Court considered whether an option to purchase real property evidenced in a lease could be

---

[1]To determine whether a party has a right to trial by jury under the state constitution, "the court must ascertain whether the action being tried is similar in nature to an action that could have been tried to a jury in 1818 when the state constitution was adopted. This test requires an inquiry as to whether the course of action has roots in the common law, and if so, whether the remedy involved was one in law or equity." Skinner v. Angliker, 211 Conn. 370, 376 (1989).

subject to the tort of conversion. In discussing intangible property rights in the context of conversion, the Superior Court noted:

> the relationship between a property right, and the document evidencing that right, [is not] demarcated by a bright line as to what categories of intangible rights are defined wholly by reference to a document. Instead there appears to be a continuum, with those property rights that depend upon the document for their enjoyment (i.e. stock certificates, rights to payment evidenced by a check) on one end, and rights whose relationship to a document is wholly fortuitous (i.e. business good will, customer names) on the other.

Id. at 5. It is unclear whether the Superior Court's reference to a fortuitous document related to customer lists considered the existence of a contract or merely a document that actually lists customers. However, Zanker's examination of the relationship between the lease document and the option right is instructive. In concluding that the option was an intangible subject to a conversion claim, Zanker reasoned that the lease document was "a key to the protection and enjoyment of the property rights of the owner, such that the character of the option is closer to a stock certificate or a check than it is to a pure intangible such as business goodwill or the right to use the services of a radio tower." Id. at 6. Here, the employment agreement is also more than a fortuitous document since it controls the scope of plaintiff's asserted property right.

The Court will not dismiss the conversion claim on this motion, but will leave plaintiff to its proof that, as a result of Bardelli's action, "it was excluded from exercising its right of ownership, possession and control over" its proprietary material and suffered a resulting harm. See News America Marketing In-Store, Inc. v. Marquis, 86 Conn.App. 527, 545 (2004).

Tortious Interference with Contractual/Business Relations

Defendants argue that plaintiff's claims of tortious interference with contractual/business relations should be dismissed for failure to allege tortious conduct.

A claim of tortious interference with business relations requires a plaintiff to "plead and prove at least some improper motive or improper means" that is "beyond the fact of the interference itself." Blake v. Levy, 191 Conn. 257, 262 (1983). Tortious conduct may be established by proof of fraud, misrepresentation, intimidation, or malicious intent on the part of a defendant. Robert S. Weiss & Associates, Inc. v. Wiederlight, 208 Conn. 525, 536 (1988). In considering whether the alleged specific acts of interference are improper, Blake referenced the factors enumerated in the Restatement (Second), Torts § 769, which include "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."

As previously discussed relevant to the claim of breach of implied covenant of good faith, the allegations indicate bad faith conduct on the part of Bardelli that was in violation of her contract with plaintiff; and that such conduct advanced Bardelli's and Edge's business interests at the expense of that of Modis, her then current employer. Accordingly, the Court finds that plaintiff's allegations of Bardelli's conduct set forth improper conduct beyond the interference itself. Plaintiff has met the standard for

federal pleading on the claim of tortious interference against Bardelli.

As to defendant Edge, plaintiff alleges that Edge "has undertaken a course of conduct to induce Defendant Bardelli to breach her employment agreement with Modis by leaving Modis' employ to go to work for Edge Technology in the same capacity as she worked for Modis. . ."; and that "Edge Technology has diverted from Modis" its business relationship with Bardelli. Further, plaintiff asserts that Edge "has intentionally and unjustifiably interfered with Modis' contractual and/or advantageous business relationship with Defendant Bardelli, resulting in damages to Modis." These allegations are susceptible to construction of an improper means or motive on the part of Edge. In light of the liberal federal pleading standard, the Court cannot find as a matter of law that plaintiff is not entitled to offer evidence of fraud, misrepresentation, intimidation, or malicious intent in support of its tortious interference claim against Edge.

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. # 20] is GRANTED as to plaintiff's CFAA claim (count one), and DENIED as to all other claims. Plaintiff may replead its complaint consistent with this ruling by January 25, 2008, or if more time is necessary, at a date that is mutually agreeable to the parties.



Warren W. Eginton, Senior U.S District Judge


Dated this _22nd__ day of January, at Bridgeport, Connecticut.