UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MODIS, INC.,                                              Civil Action No. 3:07-cv-01638-WWE

    Plaintiff,

v.

TRISHA BARDELLI and
EDGE TECHNOLOGY SERVICES, INC.

    Defendants.

_____/

**SECOND AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE AND OTHER RELIEF**

Plaintiff Modis, Inc. ("Modis") sues Defendant Trisha Bardelli ("Defendant Bardelli") and Edge Technology Services, Inc. and alleges as follows:

**INTRODUCTION**

1.    This is an action for damages and injunctive and other relief, asserting various statutory and common law claims against Defendant Bardelli, including, *inter alia*: (1) breach of confidentiality, non-disclosure, and non-competition provisions of a contract between Modis and Defendant Bardelli; (2) breach of duty of loyalty; (3) actual and threatened misappropriation of Modis' trade secrets and confidential business information in violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50 et seq.; (4) breach of the implied covenant of good faith and fair dealing; (5) conversion; and (6) violation of the Connecticut Unfair Trade Practices Act.  Furthermore, Modis is bringing an action for damages and injunctive and other relief against both Defendant Bardelli and Edge Technology Services, Inc. for tortious interference with contractual and advantageous business relations.

2731463v1

2. This action arises out of a scheme devised and implemented by Defendant Bardelli, while formerly employed with Modis, to convert, conceal and misappropriate Modis' trade secrets and other confidential proprietary information in furtherance of her plan to unfairly compete with Modis and tortiously interfere with its contractual relations in violation of the Connecticut Uniform Trade Secrets Act, the Connecticut Unfair Trade Practices Act, and her non-solicitation, non-compete and confidentiality obligations in her employment contract with Modis. This action also arises out of Defendant Edge Technology's tortious interference with Modis' contractual relations.

3. Defendant Bardelli is now unfairly competing with Modis, and unlawfully took possession of certain of Modis' trade secrets and confidential proprietary information during the final days of her employment; thus Defendant Bardelli is, upon information and belief, using same, in an effort to compete unlawfully with Modis for its current and prospective clients and consultants.

4. Modis' claims against Defendant Bardelli arise out of both her: (a) past torts, contractual breaches and statutory violations with respect to Modis; and (b) ongoing torts, contractual breaches and statutory violations with respect to Modis.

5. Modis is entitled to immediate relief, including a restraining order and injunctive relief because Defendant Bardelli's unlawful conduct has caused and unless enjoined will continue to cause irreparable harm to Modis for which there is no adequate remedy at law.

## PARTIES, JURISDICTION & VENUE

6. At all times mentioned, Modis, a Florida corporation with its principal place of business in Jacksonville, Florida, was and is authorized to do business in Connecticut and does in fact conduct business in Connecticut, including Hartford. Modis operates an office located in Meriden, Connecticut.

7. Defendant Bardelli is, and at all times mentioned was, an individual residing in the State of Conneticut. Defendant Bardelli is, and at all times mentioned was, transacting substantial business in Connecticut.

8. Defendant Edge Technology Services, Inc. ("Edge") is a Connecticut corporation with its principal place of business in Middletown, Connecticut. Edge Technology operates an office at, among other places, 100 Roscommon Drive, Suite 120, Middletown, Connecticut 06457.

9. This Court has jurisdiction over this action because complete diversity exists between the parties and the Court's supplemental jurisdiction extends to the state law claims.

10. The amount in controversy in this action meets or exceeds $75,000.

11. Venue of this action is proper under 28 U.S.C. § 1391 (b).

**FACTS COMMON TO ALL COUNTS**

12. Modis serves its business and governmental clients' needs by providing various consulting and staffing services. Modis is a recognized leader in providing customized information technology ("IT") workforce solutions to companies and other entities around the country, including information technology, temporary IT personnel and IT services.

13. From June 19, 2000 to October 5, 2007, Defendant Bardelli was employed by Modis as a Resource Development Manager ("RDM"), out of an office located in Meriden, Connecticut. Modis' Meriden, Connecticut office serves the Meriden and Hartford market and surrounding areas.

14. As an RDM for Modis, Defendant Bardelli was Modis' primary contact with certain of its clients and prospective clients.

15. As an RDM, Defendant Bardelli was responsible for locating and recruiting candidates to place at clients of Modis in the Meriden, Connecticut area.

16. The universe of prospective clients for Modis' services is large, potentially consisting of every institution that uses computer technology or houses an IT department. From this vast universe of potential clients, however, Modis has invested substantial time and money to identify those businesses and firms that actually wish to use temporary, direct, or temporary-to-direct IT personnel and to develop substantial relationships with them.

17. Modis has thus devoted substantial time and expense to identifying clients receptive to Modis' services, identifying the key decision makers within those various clients, cultivating Modis' client relationships, learning the specialized needs and preferences of Modis' clients, determining how those needs match the capabilities of Modis' employees and working out client-specific pricing and service arrangements.

18. Modis has also spent substantial time and money to develop confidential information about potential candidates to serve its clients' needs and information which permits Modis to reach conclusions about which clients Modis wishes to serve and which offer the most

attractive opportunities. When Modis places a candidate with a client, Modis then refers to the candidate as a "consultant."

19. Modis' trade secret compilation of client, candidate and consultant specific information is maintained in its secured database called COSMOS (the "Database").

20. The Database was compiled over an extensive amount of time and at significant expense to Modis. Modis has made reasonable and diligent efforts to maintain the confidentiality of such information. The Database is housed in a secure server, all authorized users are required to enter personalized passwords to access it, no one is permitted to use it except for serving Modis clients on behalf of Modis, and all employees using it are required to sign a confidentiality agreement at the start of their employment.

21. The proprietary financial and client information in the Database includes Modis' consultants' revenues, gross margins and other costs related to candidate placements, client and prospective client development activities, and candidate and client activity tracking information (including billing rates, margins, candidate identities and status, employee information, client identities and the names of client contacts, decision makers, and requirements).

22. The Database, together with other confidential and proprietary information, particularly as to client contact information and billing practices, is unique to Modis and gives Modis a significant competitive advantage in the marketplace.

23. As a result of her job duties, Defendant Bardelli became intimately familiar with certain of Modis' trade secrets and proprietary information, primarily knowledge from confidential internal reports and conversations with others at Modis of the compensation,

availability, capabilities and preferences of candidates, as well as the needs and preferences of Modis' clients.

24. Because of her position, Defendant Bardelli also learned about the specific billing arrangements into which Modis or the client is willing to enter. She became familiar with, for example, the types of billing arrangements Modis would and would not offer, what margins Modis expects from various types of clients, and the conditions under which Modis would change its regular requirements.

25. Modis invested substantial time and money to develop and maintain those legally unique relationships with and confidential information about certain of Modis' clients and their staffing preferences, the type of candidates with which Modis works, and Modis' strategies for developing and expanding business.

26. The temporary IT personnel field is highly competitive and the client, candidate and consultant information, and the substantial relationships Modis has developed, including Modis' strategies for meeting client needs, enable it to develop and retain clients and to enjoy a competitive advantage over others and distinguish Modis from its competitors.

27. Modis does not share its trade secrets and confidential proprietary information about how it serves its clients with its competition. It uses this information to expand client relationships and build goodwill.

28. Therefore, to protect Modis' legitimate business interests after a Recruiter departs from employment, and to create a level playing field in recognition that its Recruiters possess and use Modis' valuable and confidential information, Modis' Recruiters are required to enter

into agreements which require confidentiality and which restrict their post-employment competitive activities as more fully described below.

29. Therefore, as a condition of her employment, Defendant Bardelli was required to enter into an employment agreement to protect, *inter alia,* Modis' confidential information, goodwill, and relationships with its candidates and clients.

30. Defendant Bardelli initially signed such an Employment Agreement on June 19, 2000, in conjunction with being hired as a RDM.

31. Thereafter, in February 2004, Defendant Bardelli was presented with a new Employment Agreement and, in consideration for signing the agreement, the duration of the agreement and the scope of the market area were reduced.

32. Specifically, paragraph 13 of Defendant Bardelli's February 2004 Employment Agreement with Modis limits Defendant, in pertinent part, as follows in Modis' Market Area:

> 13. During Employee's employment with Modis and for a period of twelve (12) months thereafter, whatever the reason for Employee's termination of employment, unless Employee receives Modis' advanced written waiver as described in paragraph no. 17 below, Employee shall not, either directly or indirectly, either on his or her own behalf or on behalf of another person, partnership, company, corporation, or other entity, engage in or assist others in the following activities:
>
> \*                    \*                    \*
>
> b) Soliciting, contacting, calling upon, or attempting to call upon, for any business which competes with Modis, any established or prospective Modis' client(s) (s)he served or solicited while employed by Modis, or any Modis' client(s) which were served by Modis in the Market Area, at any time during the lesser of the twelve (12) months immediately prior to Employee's termination of employment with Modis or the term of Employee's employment if lesser than twelve (12) months. To the extent that Employee

maintained relationships with Modis' client(s) prior to Employee's employment with Modis, Employee expressly acknowledges that such relationship(s) will be meaningfully enhanced by Modis.

        c) Within the Market Area, entering into, engaging in, being employed by, being connected to, consulting or rendering services for, any business which competes with, or is similar to, Modis' Business or known to Employee to be planned to be conducted by Modis at the time of Employee's separation from employment with Modis, in a capacity performing function similar to those performed or managed by Employee while employed by Modis.

33. Furthermore, paragraph 10 of Defendant Bardelli's February 2004 Employment Agreement prohibits disclosure of Modis' confidential information and provides in relevant part that: "Employee shall refrain from directly or indirectly disclosing to any third party, or using for any purpose other than for the direct benefit of Modis, any of Modis' confidential information during his or her employment and thereafter, whatever the reason for his or her leaving Modis' employ."  Likewise, paragraph 11 of Defendant Bardelli's February 2004 Employment Agreement recognizes, in pertinent part, "…that all of the items which contain any of Modis' Confidential Information are Modis' property exclusively…"

34. A true and accurate copy of Defendant Bardelli's Employment Agreement with Modis is annexed hereto as Exhibit "A" and incorporated herein as if fully set forth.

35. Defendant Bardelli's Employment Agreement also recognizes that injunctive relief would be necessary in the event of a breach or threatened breach of the Agreement, and she consented to entry to such relief against her.  See Exhibit "A," ¶ 15.

36. Furthermore, the contractual restraints in the Employment Agreement are reasonably necessary to protect Modis' legitimate business interests, including those specified above.

37. In Defendant Bardelli's Employment Agreement, Modis' "Market Area" is defined as the 50-mile radius of any Modis' office to which Defendant Bardelli was assigned, and represents the core areas where the vast majority of Modis' clients served by Modis' Meridan office are located.

38. It is within this area where Modis' Meridan office conducts its business and where its goodwill has been established. This area is where Defendant Bardelli's activities primarily took place for Modis and where she utilized her position and resources at Modis to develop clients and client goodwill.

39. On information and belief, while still employed with Modis, Defendant Bardelli began communicating with representatives of a direct competitor of Modis, Edge Technology, relative to her working for Edge Technology in a capacity and with duties and responsibilities similar to or the same as those of her position with Modis. Defendant Bardelli also utilized Modis' electronic mail ("e-mail") system on her working time at Modis to her advantage and contrary to Modis' best interests and accessed, without authorization, extensive information in Modis' database about its clients for her own purposes.

40. More specifically, just before she left Modis' employment and without authorization, Defendant Bardelli used Modis' e-mail system and accessed Modis' COSMOS database on her Modis working time apparently for the benefit of a competitor specifically as follows:

    (1) On information and belief, on or about September 13 and 17, Defendant Bardelli ran extensive searches in Modis' client database, COSMOS, containing the names of numerous persons identified as planned lead calls and

providing contact information and lead specific information of the type maintained in Modis's COSMOS database;

(2) Modis' computer records show that on or around September 10 and 11, Defendant Bardelli sent Modis emails containing Modis trade secrets and other confidential proprietary information and documents, including candidate resumes and client information, from her Modis email address to the private email address of trisha.bardelli@gmail.com.

(3) In September 2007, Defendant Bardelli also sent her personal email address to several candidates or consultants with whom she became familiar through her employment with Modis, advising them that they could reach her at her personal email address.

41. The obvious purpose of the extensive searches conducted on September 13 and 17 was to misappropriate, without authorization, trade secret and proprietary information to use to unlawfully compete with Modis.  Further, upon information and belief, since her resignation, Defendant Bardelli has continued in her new employment to divulge, misappropriate and use Modis' confidential trade secrets and other proprietary information she wrongfully obtained during the course of her employment with Modis.

42. Immediately after she left Modis's employment, Defendant Bardelli was recruited by and went to work for Defendant Edge Technology.  On information and belief, she began performing duties and responsibilities for Edge Technology similar to those she had performed with Modis.

43. Upon information and belief, a representative of Defendant Edge Technology has communicated with a current Modis client, advising that Modis' best recruiter, referring to Bardelli, left Modis and accepted employment with Edge Technology. Defendant Edge Technology's representative has also communicated negatively about Modis to at least one Modis client.

44. As a result of Defendants Bardelli's and Edge Technology's actions, Modis stands to suffer, and will continue to suffer, irreparable harm for which there is no adequate remedy at law. Modis' loss is presently impossible to quantify. Modis is threatened with the erosion and loss of client relationships, loss of candidates for placement, loss of goodwill, and loss of Modis' confidential information – precisely what it contracted with Defendant Bardelli to prevent.

45. Defendant Bardelli's conduct was willful, intentional, and not privileged.

46. All conditions precedent to filing suit have been performed, occurred or excused.

## COUNT ONE—BREACH OF EMPLOYMENT AGREEMENT
## AS TO DEFENDANT BARDELLI

47. Modis repeats and realleges the allegations of paragraphs 1 – 46 as if fully set forth herein.

48. The Employment Agreement between Defendant Bardelli and Modis is a valid and enforceable contract, and Modis has honored its obligations under the Agreement.

49. Defendant Bardelli has breached and is breaching and unless enjoined will continue to breach her obligations under the Agreement, including in particular her non-compete, non-solicit and confidentiality obligations.

50. Defendant Bardelli's conduct has caused and stands to cause Modis substantial and immediate irreparable injury, including but not limited to the actual and potential loss of client relationships and customer and employee and candidate goodwill as well as confidential information. Unless enjoined, Defendant Bardelli will continue to breach her obligations and cause further such injury.

51. As a result of these breaches, Modis has suffered damage in an amount that cannot presently be determined.

## COUNT TWO—BREACH OF DUTY OF LOYALTY AS TO DEFENDANT BARDELLI

52. Modis repeats and realleges the allegations of paragraphs 1 - 46 as if fully set forth herein.

53. During her period of employment with Modis, Defendant Bardelli owed Modis a duty of loyalty.

54. Prior to her resignation, Defendant Bardelli intentionally engaged in conduct specifically designed to compete with and injure the interests of Modis, including but not limited to downloading and stealing confidential and proprietary information belonging to Modis and diverting its corporate opportunities.

55. While employed by Modis, Defendant Bardelli acted in furtherance of her own business interests and to the detriment of Modis.

56. By intentionally engaging in such conduct during her employment with Modis, Defendant Bardelli breached her duty of loyalty to Modis.

57.     As a result of said breach, Modis has been and will continue to be severely and irreparably damaged.

### COUNT THREE—MISAPPROPRIATION OF TRADE SECRETS
### AS TO DEFENDANT BARDELLI

58.     Modis repeats and realleges the allegations of paragraphs 1 – 46 as if fully set forth herein.

59.     Modis has invested, and continues to invest, considerable amounts of time and money in acquiring, creating and developing confidential information and trade secrets, including but not limited to its highly confidential and proprietary COSMOS Database of client and consultant information.

60.     Prior to her resignation, Defendant Bardelli enjoyed a position of trust and confidence with Modis and was privy to such confidential information and trade secrets, which are the sole and exclusive property of Modis.

61.     Further, upon information and belief, Defendant Bardelli has used and continues to misappropriate Modis' confidential information and trade secrets without Modis' express or implied consent.

62.     Defendant Bardelli's misappropriation of Modis' confidential, proprietary and trade secret information was willful and malicious.

63.     Defendant Bardelli's conduct constitutes a violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50, *et seq*.

64.     As a result of Defendant Bardelli's violations of the Connecticut Uniform Trade Secrets Act, Modis has been and will continue to be severely and irreparably damaged.

## COUNT FOUR—BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO DEFENDANT BARDELLI

65. Modis repeats and realleges the allegations of paragraphs 1 – 46 as if fully set forth herein.

66. Defendant Bardelli's Employment Agreement contains an implied covenant of good faith and fair dealing that obligates each party to refrain from taking any action that will destroy or decrease the consideration to which the other party is entitled under the Agreement.

67. By her conduct, Defendant Bardelli has breached the implied covenant of good faith and fair dealing.

68. As a result of said breach, Modis has been and will continue to be damaged.

## COUNT FIVE—CONVERSION AS TO DEFENDANT BARDELLI

69. Modis repeats and realleges the allegations of paragraphs 1 – 46 as if fully set forth herein.

70. The confidential information and trade secrets taken by Defendant Bardelli belonged to Modis.

71. Defendant Bardelli has retained the confidential information and trade secrets for an indefinite period of time.

72. Defendant Bardelli's assumption and exercise of the right of ownership of the confidential information and trade secrets was unauthorized by Modis.

73. As a result of Defendant Bardelli's conversion, Modis has suffered and will continue to suffer damages.

### COUNT SIX—VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT AS TO DEFENDANT BARDELLI

74. Modis repeats and realleges the allegations of paragraphs 1 – 46 as if fully set forth herein.

75. Defendant Bardelli's conduct as set forth in the foregoing paragraphs is unethical, unscrupulous, unfair and deceptive, and constitutes an unfair method of competition or trade practice in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110 et seq. ("CUTPA").

76. Defendant Bardelli's conduct as stated above was intentional and willful.

77. Defendant Bardelli's violation of § 42-110 et seq. was carried out for the purpose of competing unfairly with Modis.

78. As a result of Defendant Bardelli's violation of CUTPA, Modis has been and will continue to be severely and irreparably damaged.

### COUNT SEVEN—TORTIOUS INTERFERENCE WITH CONTRACTUAL AND/OR ADVANTAGEOUS BUSINESS RELATIONS AS TO DEFENDANT BARDELLI

79. Modis repeats and realleges the allegations of paragraphs 1 – 46 as if fully set forth herein.

80. Modis has had substantial and on-going contractual and/or business relationships with its customers identified above and with various consultants and/or candidates and placement opportunities that Defendant Bardelli has diverted and/or is actively attempting to divert from Modis.

81. By engaging in the conduct described above, Defendant Bardelli intentionally and unjustifiably interfered with Modis' contractual and/or advantageous business relationships with those customers, candidates and/or consultants.

### COUNT EIGHT—TORTIOUS INTERFERENCE WITH CONTRACTUAL AND/OR ADVANTAGEOUS BUSINESS RELATIONS AS TO DEFENDANT EDGE TECHNOLOGY

82. Modis repeats and realleges the allegations of paragraphs 1 – 46 as if fully set forth herein.

83. Defendant Edge Technology has undertaken a course of conduct to induce Defendant Bardelli to breach her employment agreement with Modis by leaving Modis' employ to go to work for Edge Technology in the same capacity as she worked for Modis.

84. Modis has had substantial and ongoing contractual and business relationship with Defendant Bardelli described above that Defendant Edge Technology has diverted from Modis for its own benefit. Additionally, by so doing, Edge Technology is inducing, and has induced, Defendant Bardelli to violate her employment agreement with Modis.

85. By engaging in the conduct described above, Defendant Edge Technology has intentionally and unjustifiably interfered with Modis' contractual and/or advantageous business relationship with Defendant Bardelli, resulting in damages to Modis.

86. If Edge Technology is allowed to continue to tortiously interfere with Modis' contracts with its employees, Modis will be irreparably harmed with no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, as to all Counts, Modis respectfully requests:

**I.     A Temporary Restraining Order and Preliminary and Permanent Injunctions restraining and enjoining Defendant Bardelli and those in active concert with her from:**

(i) using, disclosing, misusing or further converting in any manner or in any form any of Modis' confidential, proprietary or trade secret information;

(ii) destroying, damaging or otherwise disposing of any of Modis' confidential, proprietary or trade secret information;

(iii) competing against Modis in violation of the terms of the restrictive covenants in the Modis Employment Agreement that she signed; and

(iv) hiding or destroying any documents or other evidence in any way concerning the allegations in this Amended Complaint.

**II.    A Temporary Restraining Order and Preliminary and Permanent Injunctions ordering Defendant Bardelli:**

(i) to return to Modis any and all property she has taken, including but not limited to Modis' confidential, proprietary or trade secret information; and

(ii) to abide by the terms of any restrictive covenants that she signed with Modis; and

(iii) to permit inspection by Modis or its agents of Defendant Bardelli's home computers, office computers, laptop computers, and any other property of Defendant Bardelli containing or with the potential to contain or conceal electronic information constituting the property of Modis.

**III.   The following other relief:**

(i)     Compensatory damages;

   (ii) An accounting of any gain received, directly or indirectly, by Defendants Bardelli and Edge Technology by virtue of wrongful acts as described herein;

   (iii) A constructive trust for the benefit of Modis over all advantages of any type received by Defendants Bardelli and Edge Technology by virtue of wrongful acts described herein;

   (iv) Punitive damages;

   (v) Attorneys' fees;

   (vi) Costs; and

   (vii) Such other and further relief as this Court may deem proper.

THE PLAINTIFF,
MODIS, INC.

By /s/ Melissa A. Dearing
  Eric L. Sussman (ct19723)
  Day Pitney LLP
  242 Trumbull Street
  6th Floor
  Hartford, CT 06103
  (860) 275-0276
  elsussman@daypitney.com

  Robert G. Riegel, Jr. (phv02334)
  robert.riegel@fowlerwhite.com

  Melissa A. Dearing (phv02335)
  melissa.dearing@fowlerwhite.com

  Fowler White Boggs Banker P.A.
  50 N. Laura Street, Suite 2200
  Jacksonville, FL 32202
  T: (904) 446-2645
  F: (904) 598-3131

  Its Attorneys